**Henry J.N. TAUB, Petitioner,**

v.

**CITY OF DEER PARK, Respondent.**

**No. D–1589.**

Supreme Court of Texas.

Argued Jan. 18, 1994.

Decided June 22, 1994.

Rehearing Overruled Sept. 8, 1994.

Joe G. Roady, Houston, for petitioner.

Marvin B. Peterson, Houston, P.B. Dover, Deer Park, Sheryl Sikes Roper and William A. Olson, Jr., Houston, for respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HIGHTOWER, HECHT, DOGGETT, CORNYN, GAMMAGE and ENOCH, Justices, join.

This case presents two issues involving rights of land ownership: first, whether a city's refusal to rezone property amounts to an unconstitutional taking; and second, whether a landowner is entitled to recover for damages to the remainder of property when the portion taken divides the remainder tract in half. The court of appeals approved the trial court's ruling, which upheld the refusal to rezone and awarded no remainder damages in the condemnation. 1994 WL 394095.[1] We affirm the court of appeals' judgment on the rezoning issue; but on the issue of remainder damages, we conclude that the court of appeals misapplied the law on special benefits. Consequently, we reverse the court of appeals' judgment in part and remand the cause to that court for further consideration.

I.

In 1978, the City of Deer Park filed two eminent domain proceedings on a tract of land owned by Henry J.N. Taub. The City sought 2.4691 acres for street improvements from the southern portion of the tract and another 14.5616 acres to construct drainage ditch structures which would run along the southeastern side of the tract, extend across the tract to the western edge, and then continue along the northwestern section of the tract.

In 1980, Taub filed an application to rezone the southern 69.6684 acres of the parent tract from single-family residential (SF–1) to multi-family residential (MF–1). The north-

---

1. The court of appeals reversed and remanded to allow correction of errors in the form of the judgment. Neither party complains of this action.

ern 49.55 acres of the tract had previously been rezoned from SF–1 to Industrial Parks–1.

In meetings before the Zoning and Planning Commission and the City Council, Taub presented evidence that his tract could not be profitably developed for single-family residential use and that there was a demand in Deer Park for multi-family housing. Deer Park residents, as well as city and school officials, strenuously objected to Taub's rezoning proposal. There was testimony that rezoning Taub's tract for multi-family residential use would require new city facilities and personnel; would cause traffic, water, and sewer problems; and would prevent the City from providing adequate fire, police, or school facilities for the project. After considering the evidence, the Zoning and Planning Commission voted unanimously to deny Taub's application. The City Council accepted the recommendation of the Zoning Commission and denied the request.

In the condemnation proceedings, the special commissioners valued the property to be taken at $7,000 per acre, based on single-family residential use. Accordingly, they awarded Taub $18,500 for the street taking and $217,000 for the ditch taking. Taub objected to this valuation and filed a separate suit against the City, asserting that the property taken should be valued on the basis of multi-family rather than single-family zoning. The condemnation actions were transferred to the district court and were later consolidated with Taub's suit.

After a bench trial, the trial court rendered judgment for the City, finding that the City's refusal to rezone was not unreasonable or arbitrary and that there was no damage to the remainder of Taub's land as a result of the taking. The court of appeals affirmed.

## II.

Taub argues that the City has effectively taken his property by refusing to rezone it from single-family to multi-family residential use, thus preventing him from profitably developing the property. We disagree.

■ An act short of actual physical invasion, appropriation, or occupation can amount to a compensable taking when a governmental agency has imposed restrictions that constitute an unreasonable interference with the landowner's right to use and enjoy the property. *See City of Austin v. Teague,* 570 S.W.2d 389, 393 (Tex.1978); *DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex.1965); *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), *cited in Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2892, 120 L.Ed.2d 798 (1992). While it is impossible to state categorical rules for such cases, important considerations are whether property has been rendered "wholly useless," or whether its value has been totally destroyed. *Teague,* 570 S.W.2d at 393 (citing *Armstrong v. United States,* 364 U.S. 40, 48, 80 S.Ct. 1563, 1568, 4 L.Ed.2d 1554 (1960) (although not every governmental act affecting property constitutes a taking, "total destruction by the Government of all value of [certain] liens" is a taking)).

■ In the present case, Taub's land is not rendered completely useless or deprived of all economically beneficial use. While the development of the property is limited in scope, it is not altogether precluded. The testimony Taub offered at trial was simply that the land could not be *profitably* developed when zoned for single-family use. The takings clause, however, does not charge the government with guaranteeing the profitability of every piece of land subject to its authority. Purchasing and developing real estate carries with it certain financial risks, and it is not the government's duty to underwrite this risk as an extension of obligations under the takings clause. Taub has failed to show, under these circumstances, a sufficiently severe economic impact. We need not decide whether a more restrictive ordinance would constitute a taking; we simply hold, under the circumstances of this case, that the City's refusal to rezone places no constitutional burden on Taub's property. *See Lucas,* —— U.S. at ——, 112 S.Ct. at 2888 (under federal takings clause, addressing a prohibition on any habitable structures on a landowner's land).

Taub asserts that the City's dual role as both a rezoning authority and a condemning

authority proves that it acted to its own advantage, in violation of *City of Austin v. Teague*, 570 S.W.2d at 393. Under *Teague*, a landowner may recover damages when the government, acting in the role of an ostensibly neutral arbiter, acts for its own advantage against a landowner's economic interest.

■ The possibility of conflict is present whenever a governmental entity becomes involved in both condemning and appraising land. We recently addressed this conflict in *State v. Biggar*, 873 S.W.2d 11 (Tex.1994), in which we held that the State of Texas improperly used its discretion as arbiter to gain an advantage as the purchaser of land in condemnation proceedings and that this amounted to an unconstitutional taking of property. The landowners in *Biggar* provided evidence that the State denied a routine easement exchange in order to reduce the cost of acquiring a portion of the Biggar tract. Taub, by contrast, presented no evidence at trial which would show that the City denied his zoning request for the purpose of lowering his property's value for the condemnation proceeding. Instead, he argued primarily that he could not profitably develop his property under the current single-family use ordinance. Without evidence that the City acted to serve its own advantage, we are unwilling to find the refusal to rezone invalid under this theory.

### III.

Apart from the takings issue, Taub contends that the court of appeals erred in holding that there were no damages to the remainder of his property. The proposed ditch would divide the tract roughly in half. Taub's expert testified that the cost of building one bridge to unify the tract would be roughly $105,000, and that this amount represented the difference in the value of the remainder before and after the taking. Taub claims that the cost of constructing a bridge to reestablish access to the divided tract fairly and accurately represents the damage he suffered.

The City responds that the proper measure of damages to the remainder is not the cost of building a bridge to unify the tract; rather, it is the difference in the market value of the remainder immediately before and after the taking. *See State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 194, 201 (Tex. Comm'n App.1936, judgm't adopted). There are no damages to the remainder of property, the City contends, when access is reasonable, rather than naturally or substantially impaired. *See City of Waco v. Texland Corp.*, 425 S.W.2d 374, 376 (Tex.Civ.App.— Waco 1968), *aff'd*, 446 S.W.2d 1 (Tex.1969). In this case, the remainder tracts still have access to public streets. Finally, the City argues in favor of the court of appeals' holding that any harm suffered by Taub is offset by the ditch, which the City claims provides a special benefit to Taub's property by decreasing its susceptibility to flooding.

■ We agree with the City of Deer Park that the proper measure of damages for taking only part of a tract is the market value of the land actually appropriated and the difference, if any, in the market value of the remainder immediately before and immediately after the taking. *See State v. Carpenter*, 89 S.W.2d at 197. Market value is the price the property would bring in a transaction between a willing seller and a willing buyer. *See id.* at 202. The effect of condemnation on the value of the owner's remaining property is to be included in determining damages to the owner. TEX.PROP.CODE ANN. § 21.042(c) (Vernon 1984).

Here, the court of appeals concluded that there was evidence supporting an implied finding that any damage to the remainder of Taub's property would be offset by the special benefit it received from the installation of the drainage ditch. 1994 WL 394095. The evidence indicated that the drainage ditch would facilitate the property's development by upgrading it from a 100–year flood plain to a 500–year flood plain.

■ Taub argues that any benefit his land has enjoyed is not unique to his tract, but rather is shared in common with the general community, and therefore may not be used to offset damages to him. We agree.

Benefits that a landowner experiences in common with the general community may not be considered in estimating injury or benefit to the owner. TEX.PROP.CODE § 21.-

042(d) (Vernon 1984); *see also State v. Carpenter*, 89 S.W.2d at 201. General benefits are those common to all property in the vicinity of the condemnee's property; such benefits accrue to landowners within the usable range of the public work. 3 NICHOLS ON EMINENT DOMAIN, § 8A.04[2] (3d ed. 1994). Special benefits are those which arise from the peculiar relation of the land in question to the public improvement, and a benefit may be special even if it is not absolutely unique to the particular property at issue. *Id.* at § 8A.04[2]. The theory underlying the distinction between special and general benefits is that the landowner's recovery should not be reduced by benefits that arise from the condemnation itself and that inure to the community at large, rather than only to the landowner.

We recently reiterated that a special benefit connotes an enhancement more localized than a general improvement in community welfare, but not necessarily unique to a given piece of property. A special benefit is one going beyond the general benefit supposed to diffuse itself from the improvement through the municipality. *State v. Schmidt*, 867 S.W.2d 769, 780–81 (Tex.1993), *citing Haynes v. City of Abilene*, 659 S.W.2d 638, 641–42 (Tex.1983); *see also Olson v. Harris Co.*, 807 S.W.2d 594, 595 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (injuries or benefits experienced in common with the community may not be considered in estimating damages).

Here, there is no evidence that the benefit afforded is peculiar to Taub's property; rather, the improvement that placed Taub's tract in the 500–year flood plain benefited the entire eastern half of Deer Park as well. Thus, we hold that any benefit due to the installation of the drainage ditch was general to the community and may not be used to offset any damages to Taub's property.

\* \* \* \* \* \*

We conclude that the City of Deer Park's decision to deny Taub's request for rezoning

was a reasonable, legitimate exercise of the police power and did not amount to a taking of property. We also conclude, however, that the court of appeals erred in holding that any damages to the remainder of Taub's property were offset by a special benefit due to the ditch installation. Accordingly, we reverse the court of appeals' judgment in part and remand the cause to the court of appeals for further consideration of Taub's complaints regarding the trial court's refusal to award remainder damages.

GONZALEZ, Justice, concurring and dissenting.

I agree with the Court that the proper measure of damages for a taking of only part of a tract is the market value of the land actually appropriated and the difference, if any, in the market value of the remainder immediately before and immediately after the taking. However, I would affirm the judgment of the court of appeals because Taub failed to establish damages to the remainder tract. I therefore concur in part and dissent in part with the opinion of the Court.

The basis for damages to a remainder tract is the fact that the property as a whole constituted a single tract prior to the taking; that is, there was unity of use, unity of ownership, and contiguity between the remainder tract and the parcel actually taken.[1] *See City of Austin v. Capitol Livestock Auction Co.*, 453 S.W.2d 461, 463 (Tex.1970) (citations omitted); *see also* 4A NICHOLS ON EMINENT DOMAIN, § 14B.03[1] (3d ed. 1994). The most troublesome factor for determining whether damages to the remainder are appropriate is determining whether there was unity of use between the tract taken and the remainder tract. *See generally* Nichols, *supra*, § 14B.03[3].

In *Capitol Livestock*, 453 S.W.2d at 464, this Court held that there was no unity of use or unity of ownership in a remainder tract that had been sold prior to the date of the

---

1. Thus, when the tract taken is a self-sufficient economic unit independent of the remainder of the tract, with no unity of use between the two tracts, then the owner's recovery should be ascertained by considering only the condemned land. In that case, neither severance damages nor benefits to the remainder of the property are to be considered. *See DeWitt & Rearick, Inc. v. State*, 531 S.W.2d 862, 865 (Tex.Civ.App.—El Paso 1975, no writ).

taking. In the present case, the evidence establishes that Taub succeeded in re-zoning the upper half of the tract for light industrial use prior to the date of the taking, while the lower half of the tract remained zoned for single-family residential use. Because Taub is using portions of the remainder tract for different purposes, there is no unity of use for the entire tract, even though there may be unity of ownership and contiguity. *See* Nichols, *supra* § 14B.03[1] ("[W]here an owner has been proven to use portions of what would otherwise constitute a single tract for different and separate purposes, the parts of that single tract, although in unity as to ownership and contiguity, may be held to be independent even though they `are not physically separated."). A landowner may divide the actual remainder into two parts and seek damages as to only one part. *State v. Oak Hill Joint Venture*, 815 S.W.2d 827, 830 (Tex.App.—Austin 1991, no writ) (citing *State v. Watson*, 448 S.W.2d 720, 721 (Tex. Civ.App.—1969, writ ref'd n.r.e.)). Taub, however, did not do this; instead, he sought to recover damages to the remainder property as a whole. The only evidence Taub provided of market value before and after the taking was as to the *entire* tract. I do not believe that under the present record Taub established damages to the remainder tract because he did not prove that there was unity of use between the parcel taken for the ditch easement and the remainder of his tract.[2] I would therefore affirm the judgment of the court of appeals because Taub did not establish damages to the remainder tract. I otherwise concur with the opinion of the Court.

---

**2.** Because I conclude that Taub is not entitled to remainder damages, I would not reach the question of whether the ditch provided an "implied special benefit," as the court of appeals held. 882 S.W.2d at 828. *See State v. Schmidt*, 867 S.W.2d 769, 780–81 (Tex.1993); *see also Olson v.* *Harris Co.*, 807 S.W.2d 594, 595 (Tex.App.— Houston [1st Dist.] 1990, writ denied) (injuries or benefits experienced in common with the community may not be considered in estimating damages).