02-10-224 & 236-CV REH










 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00224-CV

 


 
 
 City of North Richland Hills
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Home Town Urban Partners, LTD.
 and Arcadia Land Partners 25, Ltd.
 
 
  
 
 
 APPELLEES
 
 
 
 
 
 
 
 
 


 

----------

 

FROM THE 96th District Court
OF Tarrant COUNTY

 

----------

 

AND

 

NO. 02-10-00236-CV

 


 
 
 City of North Richland Hills
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Arcadia Land Partners 25, Ltd. AND ARCADIA HOLDINGS
 
 
  
 
 
 APPELLEES
 
 


 

----------

 

FROM THE 67TH District Court
OF Tarrant COUNTY

 

----------

 

OPINION ON REHEARING

 

----------

 

We
have considered Appellees’ motion for rehearing of our February 17, 2011
opinion and Appellant’s response.  We grant the motion for rehearing, and 








we withdraw
our February 17, 2011 opinion and judgments and substitute the following.

I.     Introduction

 

          In
these consolidated interlocutory appeals, the City of North Richland Hills (the
City) challenges the trial courts’ respective denials of the City’s partial
pleas to the jurisdiction in the lawsuits filed against it by Appellees
Hometown Urban Partners, Ltd. (Urban Partners), Arcadia Land Partners 25, Ltd.,
and Arcadia Holdings (collectively, Arcadia).[1]  The City contends that
governmental immunity protects it from the breach of contract claims, two of
the declaratory judgment claims, and one of the inverse condemnation claims
asserted against it by Appellees.  The City also contends that Urban Partners
does not have standing to challenge a zoning amendment based on lack of
statutorily required notice.  We affirm in part and reverse in part.

II. 
Background

A. 
Factual Background[2]

          This
case concerns the Home Town Development (the Development) in the City of North
Richland Hills, Texas.  Arcadia was the original developer, and Urban Partners
owns real estate within the Development.

          In
1999, the City adopted a regulating plan to zone the area within the
Development, approved a preliminary plat for the Development, and created a Tax
Increment Financing (TIF) District to capture increased property tax valuations
generated by the Development.  The regulating plan and preliminary plat
included a general street layout, development plan, and sites for a library and
a recreation center.

          In
2001, the City and Arcadia entered into the Home Town North Richland Hills
Comprehensive Development Agreement (the Development Agreement). Among other
things, the Development Agreement set forth the City’s and Arcadia’s
responsibilities for the design, construction, and eventual acceptance by the
City of public improvements in the Development.  The public improvements included
water and sewer improvements, drainage improvements, irrigation, streets,
street signs and lights, parks, and landscaping.  The Development Agreement
also provided that if certain conditions were met, Arcadia would convey a tract
of land to the City for construction of a recreation center and would grant the
City an easement for 400 parking spaces (to be constructed by the City) adjacent
to the proposed site.

          In
2004, the City adopted an amended preliminary plat for the Development.  The
amended plat included a new elementary school site but retained the original
sites for the library and recreation center.  The library was built and opened
in accordance with the preliminary plat, regulating plan, and Development
Agreement, but the recreation center has not been constructed within the
Development because the City purchased a ten-acre tract outside the Development
to construct the recreation center.  Appellees allege that the City breached
the Development Agreement by changing the location of the recreation center
without Appellees’ consent.

          When
the City created the initial zoning district for the Development, multi-family
uses were allowed within the zoning district as a matter of right without
further approval from the City.  In 2007, however, the City amended the zoning
district to allow multi-family use only with a specific use permit (SUP) from
the City.  Appellees allege that this zoning amendment occurred despite the
City’s knowledge that Urban Partners had built a multi-story apartment building
in the Development and was buying another thirty acres from Arcadia to develop
additional multi-family uses.  Appellees also allege that they were not
previously notified of the proposed zoning amendment or the City’s approval of
the zoning amendment and that Urban Partners purchased the thirty acres for
several million dollars without knowledge of the zoning amendment.  Appellees
further allege that Urban Partners applied for a SUP for multi-family use on
the thirty-acre tract after the zoning amendment and that the City imposed numerous
impossible conditions and eventually denied the SUP applications.

Private
developers have spent more than $20 million and have invested more than $140
million for land development and park improvements in the Development.  Approximately
seventy percent of the Development has been constructed, and approximately
thirty acres has been or will be dedicated to the City for public improvements.

B. 
Procedural Background

          Urban
Partners filed suit in the 96th District Court of Tarrant County in March 2009
(the Urban Partners suit), seeking declaratory, mandamus, and injunctive relief
and monetary damages relating to the City’s multi-family use zoning amendment,
and Arcadia subsequently intervened in the Urban Partners suit.  The live pleading
in the Urban Partners suit alleges claims against the City for declaratory
relief, violations of due process, inverse condemnation, estoppel, and breach
of the Development Agreement.

          In
addition, Arcadia filed suit against the City in the 67th District Court of Tarrant County (the Arcadia suit).  In the Arcadia suit, Arcadia alleges causes of
action for declaratory relief, inverse condemnation, estoppel, and breach of
the Development Agreement.

          The
City filed partial pleas to the jurisdiction in both cases, and after hearings,
each trial court denied the City’s pleas to the jurisdiction.  These
interlocutory appeals followed.

III. 
Applicable Law

Whether
the trial court had subject matter jurisdiction is a question of law that we
review de novo.  Tex. Natural Res. Conservation Comm’n v. IT-Davy,
74 S.W.3d 849, 855 (Tex. 2002).  A plea to the jurisdiction is a dilatory plea
that challenges the trial court’s subject matter jurisdiction.  Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  It is used to defeat a
cause of action without regard to whether the claims asserted have merit.  Id.

          “[S]overeign
immunity deprives a trial court of subject matter jurisdiction for lawsuits in
which the state or certain governmental units have been sued[,] unless the
state consents to suit.”  Miranda, 133 S.W.3d at 224.  In Texas, sovereign immunity has two components:  immunity from liability and immunity from
suit.  Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006); Miranda,
133 S.W.3d at 224.  Immunity from liability “bars enforcement of a judgment
against a governmental entity” and is an affirmative defense.  Tooke,
197 S.W.3d at 332; Miranda, 133 S.W.3d at 224.  Immunity from suit, on
the other hand, “bars suit against the [governmental] entity altogether”
because it “deprives a court of subject matter jurisdiction.”  Tooke,
197 S.W.3d at 332; Miranda, 133 S.W.3d at 224.  This appeal involves
immunity from suit.

When
a governmental entity such as the City enters into a contract, it waives immunity
from liability but does not waive immunity from suit unless the legislature has
clearly and unambiguously waived the governmental entity’s immunity from suit. 
Tooke, 197 S.W.3d at 332–33.  To invoke the trial court’s subject matter
jurisdiction over a claim arising out of a governmental entity’s contractual
obligations, the plaintiff must allege a valid waiver of immunity from suit and
plead sufficient facts demonstrating the trial court’s jurisdiction.  Miranda,
133 S.W.3d at 226; Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).  We construe the pleadings liberally in favor
of the plaintiff, look to the pleader’s intent, and accept the pleadings’
factual allegations as true.  Miranda, 133 S.W.3d at 226.  If, as in
this case, a plea to the jurisdiction challenges the existence of
jurisdictional facts, we consider relevant evidence submitted by the parties
that is necessary to resolve the jurisdictional issues.  Id. at 227; Bland,
34 S.W.3d at 555.  We take as true all evidence favorable to the nonmovant, and
we indulge every reasonable inference and resolve any doubts in the nonmovant’s
favor.  Wise Reg’l Health Sys. v. Brittain, 268 S.W.3d 799, 805 (Tex. App.—Fort Worth 2008, no pet.) (citing Miranda, 133 S.W.3d at 228).  If the
evidence creates a fact question regarding jurisdiction, the trial court must
deny the plea to the jurisdiction and leave its resolution to the factfinder.  Miranda,
133 S.W.3d at 227–28.  But if the evidence is undisputed or fails to raise a
fact question on the jurisdictional issue, the trial court rules on the plea to
the jurisdiction as a matter of law.  Id. at 228.

V.  Parties’
Contract Involved Services

          The
City contends in its first issue that the trial courts do not have subject
matter jurisdiction over Appellees’ breach of contract claims.  The City argues
that the Development Agreement is not a qualifying agreement under local
government code section 271.152 because it does not involve the provision of
goods or services to the City.  Appellees respond that they provided several
services to the City that fall within the waiver of the City’s immunity from
suit and that the trial courts therefore have subject matter jurisdiction over
their breach of contract claims.

          Section
271.152 of the local government code states:

A
local governmental entity that is authorized by statute or the constitution to
enter into a contract and that enters into a contract subject to this
subchapter waives sovereign immunity to suit for the purpose of adjudicating a
claim for breach of the contract, subject to the terms and conditions of this
subchapter.

 

Tex. Loc.
Gov’t. Code Ann. § 271.152 (Vernon 2005).  A “contract subject to this
subchapter” is defined, in relevant part, as “a written contract stating the
essential terms of the agreement for providing goods or services to the local
governmental entity.”  Id. § 271.151(2) (Vernon 2005).

The
City argues that the Development Agreement is not a contract for “goods or
services” because the Development Agreement is ultimately a contract for the
conveyance of real property.[3]  The City also argues
that even though Appellees used or provided goods or services to construct the
improvements on the property, the “provision of goods and services as a
precursor or condition to the conveyance of real property is not the provision
of ‘goods or services.’”[4]  But we cannot agree with
the City’s contention that the Development Agreement is merely a conveyance of
real property.  Instead, we believe the City’s first issue is resolved by two
of the supreme court’s recent decisions.  See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth., 320 S.W.3d 829 (Tex. 2010); Ben
Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdiv.
Prop./Cas. Joint Self-Ins. Fund, 212 S.W.3d 320 (Tex. 2006).

In Ben
Bolt, ninety-two governmental entities formed an insurance fund to provide
casualty insurance to fund participants.  See 212 S.W.3d at 322.  Fund
members elected a governing board, and a board subcommittee resolved
self-insurance claim disputes.  See id. at 327.  The Fund argued that
its immunity from suit was not waived by local government code section 271.152
because no goods or services were provided to the Fund under the insurance
contract with a member entity.  See id.  Disagreeing, the supreme court
held that the Fund’s immunity from suit was waived because the members provided
services to the Fund in that the members elected the governing board whose
subcommittee resolved claim disputes.  See id.  Thus, in Ben Bolt,
even though the service provided to the Fund was not the primary purpose of the
contract, the members’ provision of claim dispute services was sufficient to
fall within the waiver of immunity under local government code section
271.152.  See id. at 327–28.

In Kirby Lake, several developers entered into agreements with the Clear Lake
Water Authority.  320 S.W.3d at 832.  Similar to the Development Agreement in
this case, the agreements in Kirby Lake required the developers to build
water and sewer facilities and lease the facilities to the Water Authority free
of charge.  Id.  In addition, the agreements provided that the
Developers would “cause the Facilities to be constructed under contracts with
third-party contractors.”[5]  The court of appeals
held that the developers’ “agreement to hire third parties to construct the
Facilities and to build the streets, roads, and bridges” was “sufficient to
constitute the provision of services to the [Water] Authority.”  Friendswood,
256 S.W.3d at 751.  Affirming and holding that the Water Authority’s immunity
from suit was waived by section 271.152, the supreme court stated:

We agree with the
court of appeals that the Agreements entail services provided directly to the [Water]
Authority.  The Developers contracted to construct, develop, lease, and bear
all risk of loss or damage to the facilities, obligations far more concrete
than those at issue in Ben Bolt.  We therefore hold that the Agreements
contemplate the provision of services under the statute.

 

Kirby Lake,
320 S.W.3d at 839 (internal citation omitted).

In
this case, the Development Agreement provides:

From time to time,
[Appellees] shall commence the development of various Tracts within the
Development, and [Appellees] may contract, at [their] sole cost and expense,
with such contractors as may be selected for the installation of all
Infrastructure Improvements for such Tracts, which may include both Public Use
Improvements and Private Use Improvements for such Tracts. 

 

In
addition, the Development Agreement required Appellees to prepare all plans and
designs for the public and private use improvements to be constructed by
Appellees within the Development.  It also obligated Appellees to provide
public bidding for any third-party contracts; to “supervise and oversee all
such contracts”; to “exercise due diligence and good faith efforts to insure
compliance by such contractors with all requirements of the City for the
installation and completion of Public Use Improvements”; to “use reasonable
efforts to guard against any defects or deficiencies in the work of the
contractor(s) or subcontractors”; to “reject any work or materials that do not,
in [Appellees’] professional judgment, materially conform to the appropriate
contract documents”; to obtain lien waivers or “bills paid affidavits” from all
contractors under Public Improvement Contracts; to “establish and maintain a
central file for all design, construction, and related contractual documents”;
and to “coordinate with the appropriate contractors the performance and
completion of any unfinished items in respect of the Public Use Improvements.” 
Moreover, the Development Agreement required Appellees to “follow the good
faith recommendations of the engineer retained by [Appellees]” to prepare the
plans for sewer system improvements within the Development. 

The
City points to the language in the Kirby Lake agreements requiring the
developers to retain third-party contractors to construct the facilities and
argues that the Development Agreement is different because Appellees were
authorized but not required to retain third-party contractors to complete the
construction and installation.  Even if this were a legitimate basis to
distinguish Kirby Lake, there is no such distinction in this case.  The
Development Agreement, at a minimum, required Appellees to retain an engineer
to prepare plans for water, sewer, and drainage improvements within the
Development because it obligated Appellees to follow the “good faith
recommendations” of “the engineer retained by [Appellees]” with regard to each
of those improvements.  Thus, we need not decide whether a contract that merely
authorizes rather than requires a developer to retain third-party contractors
removes the contract from the waiver of immunity in local government code
section 271.152.

Here,
just as in Kirby Lake, Appellees provided various services to the City
pursuant to the Development Agreement, including but not limited to the
retention of third-party contractors.  See Kirby Lake, 320 S.W.3d at 839–40; Ben Bolt, 212 S.W.3d at 327–28.  Thus, the holdings of Kirby Lake and Ben Bolt are dispositive of the City’s first issue.  We
hold that local government code section 271.152 waives the City’s immunity from
suit with regard to the Development Agreement because the Development Agreement
is a contract for the provision of services to the City within the meaning of
that statute.  See Tex. Loc. Gov’t Code Ann. §§ 271.151(2), .152; Kirby
Lake, 320 S.W.3d at 839–40; Ben Bolt, 212 S.W.3d 327–28; Friendswood
Dev. Co., 256 S.W.3d at 751.  We overrule the City’s first issue.

V.  Limitation
of Damages

          In
its second issue, the City contends that even if the Development Agreement
falls within the waiver of immunity in local government code Chapter 271, the
trial courts lack subject matter jurisdiction over Appellees’ breach of
contract claims because Appellees’ alleged damages do not fall within those
available under local government code section 271.153.

          Relevant
to this case, section 271.153 provides that breach of contract damages against
the City are limited to “the balance due and owed by the [City] under the
contract” and cannot include any consequential damages not expressly included
within any balance due and owing to Appellees.  Tex. Loc. Gov’t Code Ann. §
271.153(a)(1), (b)(1) (Vernon Supp. 2010).  The City argues both that there is
no balance due and owing to Appellees and that Appellees’ potential damages are
consequential damages for which sovereign immunity is not waived by Chapter
271.  Appellees respond that the City’s damages argument is not jurisdictional
and is premature.

          In
 Kirby Lake, the supreme court stated that “[t]he purpose of
section 271.153 is to limit the amount due by a governmental agency on a
contract once liability has been established, not to foreclose the
determination of whether liability exists.”  320 S.W.3d at 840.  And in City
of Mesquite v. PKG Contracting, Inc., our sister court stated that
“statutory limitations on PKG’s recoverable damages do not deprive the trial
court of subject matter jurisdiction to adjudicate PKG’s breach of contract
claims.”  263 S.W.3d 444, 448 (Tex. App.—Dallas 2008, pet. denied).

Appellees
pleaded that there are amounts due and owing under the Development Agreement
and that they seek specific performance of the Development Agreement,[6]
and they argue on appeal that they seek recovery of at least the cost of
constructing 400 parking spaces due to the City’s relocation of the recreation
center.  Appellees’ pleadings are sufficient to invoke the trial courts’
subject matter jurisdiction.  See Dallas Area Rapid Transit v. Monroe Shop
Partners, Ltd., 293 S.W.3d 839, 842 (Tex. App.—Dallas 2009, pet. denied); PKG
Contracting, Inc., 263 S.W.3d at 448.  The City’s argument concerning
Appellees’ damages “takes us far into the merits of the lawsuit and beyond
jurisdictional facts,” Dallas Area Rapid Transit, 293 S.W.3d at 842, and
we decline to adjudicate Appellees’ damage claims by applying section 271.153 within
the procedural context of the City’s pleas to the jurisdiction.[7] 
We agree with the PKG court that the “trial court is in the best
position following further proceedings to determine whether [Appellees may]
recover some, all, or none of the damages and remedies [they] claim[].”[8] 
PKG Contracting, Inc., 263 S.W.3d at 448; see Dallas Area Rapid Transit,
293 S.W.3d at 842; see also City of Houston v. S. Elec. Servs., Inc.,
273 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding
pleadings alleged sufficient facts to establish waiver of immunity from suit
and to defeat plea to jurisdiction and declining to “adjudicate” the
plaintiff’s damage claim through plea to jurisdiction).  We overrule the City’s
second issue.

VI. 
Requests for Declaratory Relief and Attorney’s Fees

          The
City argues in its third issue that the trial courts lack subject matter
jurisdiction over two of Appellees’ requests for declaratory relief because one
request does not ask the trial court to construe or decide the validity of a
municipal ordinance or franchise and because the City is not a proper party in
a suit relating to the second request.  The City’s fourth issue asserts that
Appellees cannot recover attorney’s fees under the Declaratory Judgment Act for
the requests for declaratory relief over which the trial courts do not have subject
matter jurisdiction.

A.  Relocation
of Recreation Center

1.  Applicable
Law

          The
Texas Declaratory Judgments Act contains a waiver of immunity from suit.  See
 Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (Vernon 2008); City of El
Paso v. Heinrich, 284 S.W.3d 366, 373 n.6 (Tex. 2009).  But this waiver is
a limited one, and determining whether a particular request for declaratory
relief falls within this waiver of immunity is often complicated. 

          Immunity
from suit is waived if a party joins a governmental entity and seeks a declaration
that an ordinance or statute is invalid, based on either constitutional or
nonconstitutional grounds.  See Heinrich, 284 S.W.3d at 373 n.6; City
of Elsa v. M.A.L., 226 S.W.3d 390, 391–92 (Tex. 2007); Lakey v. Taylor,
278 S.W.3d 6, 15 (Tex. App.—Austin 2008, no pet.); see also City of Beaumont v. Bouillion, 896 S.W.2d 143, 148–49 (Tex. 1995).  Likewise, immunity from
suit is waived if a party joins a governmental entity and seeks a declaration
construing an ordinance or statute.  See Tex. Lottery Comm’n v. First State
Bank of DeQueen, 325 S.W.3d 628, 633–34 (Tex. 2010) (noting that
governmental entities are to be joined in suits to construe their legislative
pronouncements and that immunity from suit is waived in such suits (citing Heinrich,
284 S.W.3d at 373 n.6)); Tex. Educ. Agency v. Leeper, 893 S.W.2d 432,
445–46 (Tex. 1994) (stating that governmental entities are not immune from
suits seeking a construction of their legislative pronouncements).  However, governmental
immunity generally bars suits for retrospective monetary relief, and private
parties cannot circumvent a governmental entity’s immunity from suit by
characterizing a suit for money damages as a declaratory judgment claim.  See
Heinrich, 284 S.W.3d at 368–69, 371.  Therefore, if a litigant joins a
governmental entity and seeks an otherwise proper declaratory judgment
construing or invalidating a statute, this claim is nonetheless barred by
governmental immunity if the declaration sought would have the effect of
establishing a right to relief against the governmental entity for which
governmental immunity has not been waived.  See id. at 372; City of Houston v. Williams, 216 S.W.3d 827, 828–29 (Tex. 2007); State v. BP Am. Prod. Co., 290 S.W.3d 345, 360 (Tex. App.—Austin 2009, pet. filed).

          2. 
Analysis

          The
City challenges Appellees’ request for a declaration “that the City violated
the regulating plan, Development Agreement, TIF Plan and plats in relocating
the recreation center site without obtaining [Appellees’] consent.”  In this regard,
we note that one of Appellees’ breach of contract allegations is that without
Appellees’ consent, “the City purchased a 10 acre site outside of [the
Development] to construct the recreation center. . . . The City has violated
the Development Agreement, approved [Development] zoning regulation plan and
plats which clearly show the civic location of the recreation center.”  A party
may not seek a declaratory judgment “only in an attempt to have the trial court
decide its breach-of-contract claim.”  IT-Davy, 74 S.W.3d at 860
(holding that the limited waiver under the Declaratory Judgment Act recognized
in Leeper “does not allow private parties to sue the State for money
damages”); see also City of Corinth v. NuRock Dev. Inc., 293 S.W.3d 360,
368–69 (Tex. App.—Fort Worth 2009, no pet.) (holding that immunity is not
waived for a requested declaration that the plaintiff “did not materially
breach the [contract] or otherwise fail to meet its obligations to the City”). 
Appellees’ requested declaration is merely a recasting of their claim for
breach of the Development Agreement.  See IT-Davy, 74 S.W.3d at 860; NuRock,
293 S.W.3d at 368–69.  Therefore, we hold that the trial courts in both the
Urban Partners suit and the Arcadia suit erred by denying the City’s partial
plea to the jurisdiction as to this request for a judicial declaration, and we
sustain this portion of the City’s third issue.

B. 
Denial of SUP Applications

The
City also challenges Appellees’ request in the Urban Partners suit for a
declaration “that the City did not comply with its ordinances and state statute
in denying the SUP applications.”  The City argues that this is a request for
the trial court to declare that various city officials did not comply with
state law and city ordinances in denying the SUPs, that the City is not a
proper party in a suit seeking this type of declaration, and that the allegedly
offending, non-party city officials are the proper parties.

In City
of El Paso v. Heinrich, Heinrich sued various governmental entities for
declaratory relief after the entities reduced her monthly pension benefits.  See
284 S.W.3d at 369.  Specifically, Heinrich alleged that “the Pension Board and
its individual members acted outside their authority and in violation of the
Texas Constitution when they reduced [her] benefits.”  Id. at 377.  The
court interpreted her claim as one challenging the Board’s action under the
applicable statute, not as one challenging the validity of the statute, and
held that her claim could only be brought in an ultra vires suit against
the appropriate officials in their official capacity.  Id.

In Texas
Department of Insurance v. Reconveyance Services, Inc., Reconveyance sought
declaratory relief against the Department concerning the Department’s
interpretation of certain insurance code provisions.  See 306 S.W.3d
256, 257–58 (Tex. 2010).  Reconveyance sought a declaration that the Department
had, through its interpretation of the insurance code provisions, acted beyond
its authority by attempting to limit the services Reconveyance could offer
through title agencies.  Id. at 258.  Relying on Heinrich, the
supreme court held that Reconveyance’s suit was an ultra vires suit because
it sought to establish that Department employees had acted without statutory
authority.  Id. at 258–59.  The supreme court dismissed Reconveyance’s
suit for lack of subject matter jurisdiction because Reconveyance had not sued
any of the Department’s officials.  Id. at 259.

In
their pleadings, Appellees allege that “City staff continually changed [the]
requirements” for the SUPs, “raising the bar so high it could never be met by
[Appellees]” and that “City staff manufactured three ‘reasons’ for denying the
SUP Application, ‘[but] the actual reasons . . . for the denial was that the
City did not want additional multi-family development.”  Appellees’ request for
a declaration “that the City did not comply with its ordinances and state
statute in denying the SUP applications” is, like in Heinrich and Reconveyance,
an ultra vires claim alleging that City officials acted without legal
authority in denying the SUP applications, and it may only be brought against
the City officials in their official capacities.  See Reconveyance, 306
S.W.3d at 259; Heinrich, 284 S.W.3d at 377.  Thus, the City’s immunity
from suit has not been waived, and the trial court in the Urban Partners suit
erred by denying the City’s plea to the jurisdiction as to this requested
declaration.  See Reconveyance, 306 S.W.3d at 258–59; Heinrich,
284 S.W.3d at 377.

Appellees,
citing Sanders v. City of Grapevine, argue that because the City has
conceded that the trial court has jurisdiction over some of their requested
judicial declarations, the trial court has jurisdiction over all of Appellees’
other requests for judicial declarations.  See 218 S.W.3d 772, 779–80
(Tex. App.—Fort Worth 2007, pet. denied).  However, we do not read Sanders
to support Appellees’ contention.  There, we held that Sanders’s pleading for
declaratory relief did not on its face “seek to impose damages or other
liability on the City” and that the trial court erred by granting the City’s
plea to the jurisdiction as to the request for declaratory relief.  Id.  Contrary to Appellees’ assertion, nothing in Sanders suggests that if
the City’s immunity from suit has been waived as to one request for declaratory
relief, the City’s immunity has been waived as to all other requests for
declaratory relief.  See id.  We sustain the remainder of the City’s
third issue.

C. 
Attorney’s Fees

In
part of its fourth issue, the City argues that Appellees may not recover
attorney’s fees under the Declaratory Judgments Act for any declarations over
which the City’s immunity from suit has not been waived.  We agree and hold
that Appellees may not recover attorney’s fees for prosecuting their requests
for judicial declarations (1) “that the City violated the regulating plan,
Development Agreement, TIF Plan and plats in relocating the recreation center
site without obtaining [Appellees’] consent” and (2) “that the City did not
comply with its ordinances and state statute in denying the SUP applications.” 
See NuRock, 293 S.W.3d at 370 (holding that no basis for recovery of
attorney’s fees existed because declaratory judgment claim was dismissed).  We
sustain this portion of the City’s fourth issue.[9]

VII. 
Standing to Challenge Zoning Amendment

          In
the Urban Partners suit, Appellees seek a judicial declaration “that the
multi-family/townhome SUP requirement is void and/or cannot be applied to
[Appellees’] property because notice was not made in accordance with Chapter
211, Tex. Loc. Gov’t Code.”  In its fifth issue, the City contends that Urban
Partners lacks standing to challenge the zoning ordinance amendment based on
lack of statutorily required notice because the alleged lack of notice is a
mere procedural irregularity that can only be brought by the State in a quo
warranto proceeding.[10]  

          In
relevant part, local government code section 211.007(c) states:

Before the 10th day
before the hearing date, written notice of each public hearing before the
zoning commission on a proposed change in a zoning classification shall be sent
to each owner, as indicated by the most recently approved municipal tax roll,
of real property within 200 feet of the property on which the change in
classification is proposed. 

 

Tex.
Loc. Gov’t Code Ann. § 211.007(c) (Vernon 2008).  It is undisputed that the
City did not provide the notice required by section 211.007(c), but the City
contends that the lack of notice is merely a procedural irregularity that may
only be challenged by the State in a quo warranto proceeding.

          In
Bolton v. Sparks, the supreme court held that a zoning ordinance was
invalid because the Dallas City Council did not comply with statutory notice
and public hearing requirements.  362 S.W.2d 946, 950 (Tex. 1962).  In so
holding, the court stated,

The steps directed to
be taken for notice and hearing, when provided for in the law, are intended for
the protection of the property owner, and are his safeguards against the
exercise of arbitrary power.  Each act required is essential to the exercise of
jurisdiction by the City Council, and each must be rigidly performed.

 

Id.; see
also Truman v. Irwin, 488 S.W.2d 907, 908–09 (Tex. Civ. App.—Fort
Worth 1972, no writ) (holding that zoning change was “void and ineffective
because of noncompliance” with notice procedures); City of San Antonio v.
Pope, 351 S.W.2d 269, 272 (Tex. Civ. App.—Eastland 1961, no writ) (same); City
of Amarillo v. Wagner, 326 S.W.2d 863, 866 (Tex. Civ. App.—Amarillo 1959,
writ ref’d n.r.e.) (same); Tonroy v. City of Lubbock, 242 S.W.2d 816,
818–19 (Tex. Civ. App.—Amarillo 1951, writ ref’d n.r.e.) (same).

          In
the context of municipal annexation ordinances, the supreme court has held that
private parties do not have standing to challenge municipal annexations for
procedural irregularities.  See Laidlaw Waste Sys. (Dallas), Inc. v. City of
Wilmer, 904 S.W.2d 656, 658 (Tex. 1995) (“Laidlaw has no standing to
challenge the annexation on procedural grounds, such as alleged failures to
meet the notice and signature requirements.”); Alexander Oil Co. v. City of
Seguin, 825 S.W.2d 434, 436, 438 (Tex. 1991) (stating that “[t]he only
proper method for attacking the validity of a city’s annexation of territory is
by quo warranto proceeding, unless the annexation is wholly void” and holding
that landowner’s complaints concerning adequacy of service plan presented to
city council and whether quorum was required to conduct hearing were matters
for attack via quo warranto); see also Walton v. City of Midland, 287
S.W.3d 97, 99, 102–05 (Tex. App.—Eastland 2009, pet. denied) (applying Alexander
Oil and holding quo warranto required to challenge city council’s approval
of settlement agreement when alleged impropriety by city council would only
render the act voidable, not void).

          The
City argues that even though Alexander Oil was an annexation case, it
implicitly overruled each of the zoning cases cited above because it distinguished
void acts—such as an act exceeding statutory authority—from voidable acts—such
as procedural irregularities—and held that procedural irregularities must be
challenged via quo warranto because they render annexation ordinances voidable
rather than void.[11]  According to the City, the
failure to provide notice as required by local government code section
211.007(c) is a procedural irregularity that would merely render the zoning
ordinance voidable, and thus, Urban Partners has no standing to challenge the
zoning ordinance because a quo warranto proceeding is required.

However,
the supreme court has not held that procedural irregularities in zoning
cases—such as the lack of notice alleged against the City in this case—can only
be brought by the State in quo warranto proceedings.  See Laidlaw Waste Sys.
(Dallas), Inc., 904 S.W.2d at 658; Alexander Oil, 825 S.W.2d at 437–39. 
Rather, it is well-settled that the failure to give notice of a proposed zoning
change renders the zoning ordinance void, not voidable.  See Bolton, 362
S.W.2d at 950; Truman, 488 S.W.2d at 908–09; Pope, 351 S.W.2d at
272; Wagner, 326 S.W.2d at 866; Tonroy, 242 S.W.2d at 818–19. 
Thus, even if quo warranto might be required in zoning cases involving voidable
acts (an issue we need not decide), quo warranto is not required in the present
zoning case because the failure to give notice renders the zoning ordinance
void.  See, e.g., Bolton, 362 S.W.2d at 950.  And private parties have
standing to challenge void ordinances.  See Alexander Oil, 825 S.W.2d at
436 (“The only proper method for attacking the validity of a city’s annexation
of territory is by quo warranto proceeding, unless the annexation is wholly
void.”) (emphasis added).  Therefore, we hold that Urban Partners has standing
to challenge the zoning amendment based on lack of statutorily required notice,
and we overrule the City’s fifth issue.

VIII. 
Inverse Condemnation

          In
its seventh issue,[12] the City asserts that
the trial courts do not have subject matter jurisdiction over one of Appellees’
inverse condemnation claims because it is merely a restatement of Appellees’
breach of contract claims.[13]  Appellees respond that
the City’s breach of the Development Agreement is only one of the factors to
consider in determining the merits of their inverse condemnation claim.  In
this regard, Appellees’ second amended petition alleges that the City’s actions
constitute a taking in violation of article 1, section 17 of the Texas
constitution because “the City has deprived [Appellees] of their reasonable
investment backed expectations (depriving [Appellees] of reasonable use and
enjoyment of the Property)” and that Appellees “had a reasonable expectation
that the recreation center and parking spaces would be developed in accordance
with the Development Agreement, regulating plan, preliminary plat and TIF
documents.”[14] 

          “To
establish a takings claim under Article I, section 17, the claimant must show
that a governmental actor acted intentionally to take or damage property for a
public use.”  State v. Holland, 221 S.W.3d 639, 643 (Tex. 2007).  “When
the government acts pursuant to colorable contract rights, it lacks the
necessary intent to take under its eminent-domain powers and thus retains its
immunity from suit.”  Id.  Thus, a plaintiff may not recast a breach of
contract claim against a governmental entity as one for inverse condemnation.  See
id. at 643–44.  In this case, however, Appellees have not merely recast
their breach of contract claim as one for inverse condemnation.

          “[A]
restriction in the permissible uses of property or a diminution in its value,
resulting from regulatory action within the government’s police power, may or
may not be a compensable taking.”  Sheffield Dev. Co., Inc. v. City of Glenn
Heights, 140 S.W.3d 660, 670 (Tex. 2004) (citing Taub v. City of Deer
Park, 882 S.W.2d 824, 826 (Tex. 1994)).  Although some are, “not every
regulation is a compensable taking.”  Id.  “[W]hether [a] regulation has
gone ‘too far’ and become too much like a physical taking for which the
constitution requires compensation requires a careful analysis of how the
regulation affects the balance between the public’s interest and that of
private landowners.”  Id. at 671–72.  To make this determination, courts
consider “(1) ‘the economic impact of the regulation on the claimant’; (2) ‘the
extent to which the regulation has interfered with distinct investment-backed
expectations’; and (3) ‘the character of the governmental action.’”  Id. at 672 (quoting Connolly v. Pension Benefits Guar. Corp., 475 U.S. 211, 225, 106 S. Ct. 1018, 1026 (1986)).

          Appellees
cite City of San Antonio v. El Dorado Amusement Co. to support their
contention that the City’s breach of the Development Agreement is only one
factor in evaluating the merits of their inverse condemnation claim.  See
195 S.W.3d 238, 246–47 (Tex. App.—San Antonio 2006, pet. denied).  There, El Dorado offered evidence that it had profitably operated a business for several years
before the city amended the zoning regulation to prohibit the sale of alcohol
on the premises and that the rezoning significantly impaired its ability to
operate its business.  Id.  The court held that a compensable regulatory
taking resulted from the city’s rezoning because the evidence supported “a
finding that the enactment of the rezoning ordinance had a severe economic
impact on El Dorado’s business and unreasonably interfered with El Dorado’s investment-backed expectations.”  Id. at 247; see also City of Carrolton v. McPhee, 05-08-01018-CV, 2009 WL 2596145, at *2 (Tex. App.—Dallas Aug. 25, 2009, no pet.) (mem. op.) (affirming denial of plea to jurisdiction and holding
pleadings sufficiently alleged regulatory taking).

          Here,
Appellees allege that the City deprived them of their reasonable
investment-backed expectations, and they contend that they had a reasonable
expectation—based on seventy-percent of the development being constructed in
accordance with the zoning, plats, building permits, Development Agreement, and
TIF financing documents and all of which having been in place for several
years—that the recreation center and parking spaces would be developed in accordance
with those documents.  These allegations are sufficient to allege a regulatory
taking that unreasonably interfered with Appellees’ investment-backed
expectations.  See El Dorado, 195 S.W.3d at 246–47; McPhee, 2009
WL 2596145, at *2.  While the City’s alleged breach of the Development
Agreement, standing alone, cannot form the basis of an inverse condemnation
claim because it would be nothing more than a recasting of Appellees’ breach of
contract claim, see Holland, 221 S.W.3d at 643–44, Appellees reference
the Development Agreement as only one evidentiary factor to consider in
determining whether the City’s actions as a whole constitute a regulatory
taking.  See El Dorado, 195 S.W.3d at 246–47; McPhee, 2009 WL
2596145, at *2.  We therefore overrule the City’s seventh issue.

IX. 
Conclusion

          Having
overruled the City’s first, second, fifth, and seventh issues, we affirm in
part the trial courts’ denials of the City’s partial pleas to the
jurisdiction.  Having sustained the City’s third issue and part of the City’s fourth
issue, we reverse in part the trial courts’ orders denying the City’s pleas to
the jurisdiction.  We dismiss for lack of subject matter jurisdiction (1)
Appellees’ request for a declaration in both the Urban Partners suit and the
Arcadia suit “that the City violated the regulating plan, Development
Agreement, TIF Plan and plats in relocating the recreation center site without
obtaining [Appellees’] consent”; (2) Appellees’ request for a declaration in
the Urban Partners suit “that the City did not comply with its ordinances and
state statute in denying the SUP applications”; and (3) Appellees’ requests for
attorney’s fees for prosecuting these requests for judicial declarations.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and GABRIEL, JJ.

 

DELIVERED:    April 28, 2011









[1]See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008) (permitting interlocutory
appeal from an order granting or denying a plea to the jurisdiction filed by a
governmental unit).





[2]The facts set forth below
are taken from the parties’ contract and the Appellees’ pleadings in the
proceedings below, which we accept as true and construe in Appellees’ favor
pursuant to the appropriate standard of review.  See Tex. Dep’t of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 226–27 (Tex. 2004).





[3]See, e.g., Brown
Water Marine Serv., Inc. v. Aransas Cnty. Navigation Dist. No. 1, No
13-07-00055-CV, 2008 WL 1822727, at *2 n.1 (Tex. App.—Corpus Christi Apr. 24,
2008, pet. denied) (mem. op.) (lease of property not goods or services); Valley
Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc., No. 13-07-00545-CV, 2008 WL
384320, at *4 (Tex. App.—Corpus Christi Feb. 14, 2008, no pet.) (mem. op.)
(easement to district not goods or services); Bexar Metro. Water Dist. v.
Educ. & Econ. Dev. Joint Venture, 220 S.W.3d 25, 32 (Tex. App.—San
Antonio 2006, pet. dism’d w.o.j.) (immunity retained for claim of breach of
contract for sale of real estate).





[4]See Somerset Indep.
Sch. Dist. v. Casias, No. 04-07-00829-CV, 2008 WL 1805533, at *3 (Tex. App.—Corpus Christi Apr. 23, 2008, pet. denied) (mem. op.) (holding that a contract was one for
the conveyance of land even though the seller was required to perform
environmental cleanup as a condition of closing).





[5]Clear Lake City Water
Auth. v. Friendswood Dev. Co., Ltd., 256 S.W.3d 735, 748 (Tex. App.—Houston [14th Dist.] 2008, pet. dism’d) (op. on reh’g).  The contract language is not set
forth in the Kirby Lake opinion, but it is quoted in the opinion
resolving the Water Authority’s interlocutory appeal of the trial court’s
denial of its plea to the jurisdiction and motion for summary judgment.  See
id. at 739–40.





[6]The Development Agreement
provides that the non-breaching party “shall have the right to enforce the
terms of this [Development] Agreement by specific performance.”





[7]We express no opinion as
to whether Appellees may or may not be entitled to specific performance or any
other damages following a full adjudication of their claims.





[8]We are aware of the
supreme court’s holding in Tooke that the Tookes’ only damages were
consequential damages excluded from recovery by section 271.153, but Tooke
was an appeal following a trial on the merits.  See 197 S.W.3d at 329,
346.  Similarly, we held in Boyer, Inc. v. Trinity River Authority of Texas
that a fact issue required reversal of a summary judgment for the governmental
entity because the plaintiff presented evidence that its lost profits were
direct, rather than consequential, damages not precluded by section 271.153.  See
279 S.W.3d 354, 359 (Tex. App.—Fort Worth 2008, pet. denied).  This case,
however, is an interlocutory appeal following the denial of the City’s pleas to
the jurisdiction.  As our sister court stated, “We cannot say on this record
that [Appellees’] claim for damages is solely for damages excluded by the
statute.”  PKG Contracting, Inc., 263 S.W.3d at 448.





[9]The parties represented at
oral argument that they had reached an agreement concerning the remainder of
the City’s fourth issue.  Thus, we express no opinion concerning the remainder
of the City’s fourth issue.





[10]Appellees assert other
grounds in their pleadings below to invalidate or limit the zoning amendment,
and the City does not challenge those other grounds on appeal.  We express no
opinion as to Appellees’ other challenges.





[11]The City argues on
rehearing that Bolton was implicitly overruled by Alexander Oil. 
Specifically, the City contends that Alexander Oil overruled City of
Duncanville v. City of Woodland Hills, 489 S.W.2d 557, 558 (Tex. 1972) (per
curiam), and that City of Duncanville relied on Bolton.  See
Alexander Oil, 825 S.W.2d at 438–39; City of Duncanville, 489 S.W.2d
at 558.  We disagree.  Alexander Oil overruled City of Duncanville because it “conflicted with the long line of authority that only the state
can challenge annexation for such procedural irregularities because such
irregularities merely result in voidable ordinances.”  Alexander Oil,
825 S.W.2d at 439 (emphasis added).  Alexander Oil made no mention of Bolton
or any intent to overrule it.  Id. at 438–39.





[12]The City has withdrawn
its sixth issue.





[13]The City concedes that
the trial courts have subject matter jurisdiction over Appellees’ two other
inverse condemnation claims.





[14]We quote from the pleadings
in the Arcadia suit but note that the pleadings in the Urban Partners suit
contain a substantially similar allegation.