

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-10-00224-CV**

CITY OF NORTH RICHLAND HILLS          APPELLANT

V.

HOME TOWN URBAN PARTNERS, LTD.          APPELLEES
AND ARCADIA LAND PARTNERS 25, LTD.

----------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

**AND**

**NO. 02-10-00236-CV**

CITY OF NORTH RICHLAND HILLS          APPELLANT

V.

ARCADIA LAND PARTNERS 25,          APPELLEES
LTD. AND ARCADIA HOLDINGS

----------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION ON REHEARING

----------

We have considered Appellees' motion for rehearing of our February 17,

2011 opinion and Appellant's response.  We grant the motion for rehearing, and

we withdraw our February 17, 2011 opinion and judgments and substitute the following.

## I. Introduction

In these consolidated interlocutory appeals, the City of North Richland Hills (the City) challenges the trial courts' respective denials of the City's partial pleas to the jurisdiction in the lawsuits filed against it by Appellees Hometown Urban Partners, Ltd. (Urban Partners), Arcadia Land Partners 25, Ltd., and Arcadia Holdings (collectively, Arcadia).[1]  The City contends that governmental immunity protects it from the breach of contract claims, two of the declaratory judgment claims, and one of the inverse condemnation claims asserted against it by Appellees.  The City also contends that Urban Partners does not have standing to challenge a zoning amendment based on lack of statutorily required notice. We affirm in part and reverse in part.

## II. Background

### A. Factual Background[2]

This case concerns the Home Town Development (the Development) in the City of North Richland Hills, Texas.  Arcadia was the original developer, and Urban Partners owns real estate within the Development.

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008) (permitting interlocutory appeal from an order granting or denying a plea to the jurisdiction filed by a governmental unit).

[2]The facts set forth below are taken from the parties' contract and the Appellees' pleadings in the proceedings below, which we accept as true and construe in Appellees' favor pursuant to the appropriate standard of review.  *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

In 1999, the City adopted a regulating plan to zone the area within the Development, approved a preliminary plat for the Development, and created a Tax Increment Financing (TIF) District to capture increased property tax valuations generated by the Development. The regulating plan and preliminary plat included a general street layout, development plan, and sites for a library and a recreation center.

In 2001, the City and Arcadia entered into the Home Town North Richland Hills Comprehensive Development Agreement (the Development Agreement). Among other things, the Development Agreement set forth the City's and Arcadia's responsibilities for the design, construction, and eventual acceptance by the City of public improvements in the Development. The public improvements included water and sewer improvements, drainage improvements, irrigation, streets, street signs and lights, parks, and landscaping. The Development Agreement also provided that if certain conditions were met, Arcadia would convey a tract of land to the City for construction of a recreation center and would grant the City an easement for 400 parking spaces (to be constructed by the City) adjacent to the proposed site.

In 2004, the City adopted an amended preliminary plat for the Development. The amended plat included a new elementary school site but retained the original sites for the library and recreation center. The library was built and opened in accordance with the preliminary plat, regulating plan, and Development Agreement, but the recreation center has not been constructed

within the Development because the City purchased a ten-acre tract outside the Development to construct the recreation center. Appellees allege that the City breached the Development Agreement by changing the location of the recreation center without Appellees' consent.

When the City created the initial zoning district for the Development, multi-family uses were allowed within the zoning district as a matter of right without further approval from the City. In 2007, however, the City amended the zoning district to allow multi-family use only with a specific use permit (SUP) from the City. Appellees allege that this zoning amendment occurred despite the City's knowledge that Urban Partners had built a multi-story apartment building in the Development and was buying another thirty acres from Arcadia to develop additional multi-family uses. Appellees also allege that they were not previously notified of the proposed zoning amendment or the City's approval of the zoning amendment and that Urban Partners purchased the thirty acres for several million dollars without knowledge of the zoning amendment. Appellees further allege that Urban Partners applied for a SUP for multi-family use on the thirty-acre tract after the zoning amendment and that the City imposed numerous impossible conditions and eventually denied the SUP applications.

Private developers have spent more than $20 million and have invested more than $140 million for land development and park improvements in the Development. Approximately seventy percent of the Development has been

2

constructed, and approximately thirty acres has been or will be dedicated to the City for public improvements.

## B. Procedural Background

Urban Partners filed suit in the 96th District Court of Tarrant County in March 2009 (the Urban Partners suit), seeking declaratory, mandamus, and injunctive relief and monetary damages relating to the City's multi-family use zoning amendment, and Arcadia subsequently intervened in the Urban Partners suit. The live pleading in the Urban Partners suit alleges claims against the City for declaratory relief, violations of due process, inverse condemnation, estoppel, and breach of the Development Agreement.

In addition, Arcadia filed suit against the City in the 67th District Court of Tarrant County (the Arcadia suit). In the Arcadia suit, Arcadia alleges causes of action for declaratory relief, inverse condemnation, estoppel, and breach of the Development Agreement.

The City filed partial pleas to the jurisdiction in both cases, and after hearings, each trial court denied the City's pleas to the jurisdiction. These interlocutory appeals followed.

### III. Applicable Law

Whether the trial court had subject matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction. *Bland Indep. Sch. Dist. v.*

3

*Blue*, 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without regard to whether the claims asserted have merit. *Id.*

"[S]overeign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued[,] unless the state consents to suit." *Miranda*, 133 S.W.3d at 224. In Texas, sovereign immunity has two components: immunity from liability and immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); *Miranda*, 133 S.W.3d at 224. Immunity from liability "bars enforcement of a judgment against a governmental entity" and is an affirmative defense. *Tooke*, 197 S.W.3d at 332; *Miranda*, 133 S.W.3d at 224. Immunity from suit, on the other hand, "bars suit against the [governmental] entity altogether" because it "deprives a court of subject matter jurisdiction." *Tooke*, 197 S.W.3d at 332; *Miranda*, 133 S.W.3d at 224. This appeal involves immunity from suit.

When a governmental entity such as the City enters into a contract, it waives immunity from liability but does not waive immunity from suit unless the legislature has clearly and unambiguously waived the governmental entity's immunity from suit. *Tooke*, 197 S.W.3d at 332–33. To invoke the trial court's subject matter jurisdiction over a claim arising out of a governmental entity's contractual obligations, the plaintiff must allege a valid waiver of immunity from suit and plead sufficient facts demonstrating the trial court's jurisdiction. *Miranda*, 133 S.W.3d at 226; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiff, look

4

to the pleader's intent, and accept the pleadings' factual allegations as true. *Miranda*, 133 S.W.3d at 226. If, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id.* at 227; *Bland*, 34 S.W.3d at 555. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 805 (Tex. App.—Fort Worth 2008, no pet.) (citing *Miranda*, 133 S.W.3d at 228). If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the factfinder. *Miranda*, 133 S.W.3d at 227–28. But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## V. Parties' Contract Involved Services

The City contends in its first issue that the trial courts do not have subject matter jurisdiction over Appellees' breach of contract claims. The City argues that the Development Agreement is not a qualifying agreement under local government code section 271.152 because it does not involve the provision of goods or services to the City. Appellees respond that they provided several services to the City that fall within the waiver of the City's immunity from suit and that the trial courts therefore have subject matter jurisdiction over their breach of contract claims.

5

Section 271.152 of the local government code states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't. Code Ann. § 271.152 (Vernon 2005). A "contract subject to this subchapter" is defined, in relevant part, as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." *Id.* § 271.151(2) (Vernon 2005).

The City argues that the Development Agreement is not a contract for "goods or services" because the Development Agreement is ultimately a contract for the conveyance of real property.[3] The City also argues that even though Appellees used or provided goods or services to construct the improvements on the property, the "provision of goods and services as a precursor or condition to the conveyance of real property is not the provision of 'goods or services.'"[4] But

---

[3]*See, e.g.*, *Brown Water Marine Serv., Inc. v. Aransas Cnty. Navigation Dist. No. 1*, No 13-07-00055-CV, 2008 WL 1822727, at *2 n.1 (Tex. App.—Corpus Christi Apr. 24, 2008, pet. denied) (mem. op.) (lease of property not goods or services); *Valley Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc.*, No. 13-07-00545-CV, 2008 WL 384320, at *4 (Tex. App.—Corpus Christi Feb. 14, 2008, no pet.) (mem. op.) (easement to district not goods or services); *Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 32 (Tex. App.—San Antonio 2006, pet. dism'd w.o.j.) (immunity retained for claim of breach of contract for sale of real estate).

[4]*See Somerset Indep. Sch. Dist. v. Casias*, No. 04-07-00829-CV, 2008 WL 1805533, at *3 (Tex. App.—Corpus Christi Apr. 23, 2008, pet. denied) (mem. op.) (holding that a contract was one for the conveyance of land even though the seller was required to perform environmental cleanup as a condition of closing).

6

we cannot agree with the City's contention that the Development Agreement is merely a conveyance of real property. Instead, we believe the City's first issue is resolved by two of the supreme court's recent decisions. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829 (Tex. 2010); *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdiv. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320 (Tex. 2006).

In *Ben Bolt*, ninety-two governmental entities formed an insurance fund to provide casualty insurance to fund participants. *See* 212 S.W.3d at 322. Fund members elected a governing board, and a board subcommittee resolved self-insurance claim disputes. *See id.* at 327. The Fund argued that its immunity from suit was not waived by local government code section 271.152 because no goods or services were provided to the Fund under the insurance contract with a member entity. *See id.* Disagreeing, the supreme court held that the Fund's immunity from suit was waived because the members provided services to the Fund in that the members elected the governing board whose subcommittee resolved claim disputes. *See id.* Thus, in *Ben Bolt*, even though the service provided to the Fund was not the primary purpose of the contract, the members' provision of claim dispute services was sufficient to fall within the waiver of immunity under local government code section 271.152. *See id.* at 327–28.

In *Kirby Lake*, several developers entered into agreements with the Clear Lake Water Authority. 320 S.W.3d at 832. Similar to the Development Agreement in this case, the agreements in *Kirby Lake* required the developers to

7

build water and sewer facilities and lease the facilities to the Water Authority free of charge. *Id.* In addition, the agreements provided that the Developers would "cause the Facilities to be constructed under contracts with third-party contractors."[5] The court of appeals held that the developers' "agreement to hire third parties to construct the Facilities and to build the streets, roads, and bridges" was "sufficient to constitute the provision of services to the [Water] Authority." *Friendswood*, 256 S.W.3d at 751. Affirming and holding that the Water Authority's immunity from suit was waived by section 271.152, the supreme court stated:

> We agree with the court of appeals that the Agreements entail services provided directly to the [Water] Authority. The Developers contracted to construct, develop, lease, and bear all risk of loss or damage to the facilities, obligations far more concrete than those at issue in *Ben Bolt*. We therefore hold that the Agreements contemplate the provision of services under the statute.

*Kirby Lake*, 320 S.W.3d at 839 (internal citation omitted).

In this case, the Development Agreement provides:

> From time to time, [Appellees] shall commence the development of various Tracts within the Development, and [Appellees] may contract, at [their] sole cost and expense, with such contractors as may be selected for the installation of all Infrastructure Improvements for such Tracts, which may include both

---

[5]*Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, 256 S.W.3d 735, 748 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd) (op. on reh'g). The contract language is not set forth in the *Kirby Lake* opinion, but it is quoted in the opinion resolving the Water Authority's interlocutory appeal of the trial court's denial of its plea to the jurisdiction and motion for summary judgment. *See id.* at 739–40.

8

Public Use Improvements and Private Use Improvements for such Tracts.

In addition, the Development Agreement required Appellees to prepare all plans and designs for the public and private use improvements to be constructed by Appellees within the Development. It also obligated Appellees to provide public bidding for any third-party contracts; to "supervise and oversee all such contracts"; to "exercise due diligence and good faith efforts to insure compliance by such contractors with all requirements of the City for the installation and completion of Public Use Improvements"; to "use reasonable efforts to guard against any defects or deficiencies in the work of the contractor(s) or subcontractors"; to "reject any work or materials that do not, in [Appellees'] professional judgment, materially conform to the appropriate contract documents"; to obtain lien waivers or "bills paid affidavits" from all contractors under Public Improvement Contracts; to "establish and maintain a central file for all design, construction, and related contractual documents"; and to "coordinate with the appropriate contractors the performance and completion of any unfinished items in respect of the Public Use Improvements." Moreover, the Development Agreement required Appellees to "follow the good faith recommendations of the engineer retained by [Appellees]" to prepare the plans for sewer system improvements within the Development.

The City points to the language in the *Kirby Lake* agreements requiring the developers to retain third-party contractors to construct the facilities and argues

9

that the Development Agreement is different because Appellees were authorized but not required to retain third-party contractors to complete the construction and installation. Even if this were a legitimate basis to distinguish *Kirby Lake*, there is no such distinction in this case. The Development Agreement, at a minimum, required Appellees to retain an engineer to prepare plans for water, sewer, and drainage improvements within the Development because it obligated Appellees to follow the "good faith recommendations" of "the engineer retained by [Appellees]" with regard to each of those improvements. Thus, we need not decide whether a contract that merely authorizes rather than requires a developer to retain third-party contractors removes the contract from the waiver of immunity in local government code section 271.152.

Here, just as in *Kirby Lake*, Appellees provided various services to the City pursuant to the Development Agreement, including but not limited to the retention of third-party contractors. *See Kirby Lake*, 320 S.W.3d at 839–40; *Ben Bolt*, 212 S.W.3d at 327–28. Thus, the holdings of *Kirby Lake* and *Ben Bolt* are dispositive of the City's first issue. We hold that local government code section 271.152 waives the City's immunity from suit with regard to the Development Agreement because the Development Agreement is a contract for the provision of services to the City within the meaning of that statute. *See* Tex. Loc. Gov't Code Ann. §§ 271.151(2), .152; *Kirby Lake*, 320 S.W.3d at 839–40; *Ben Bolt*, 212 S.W.3d 327–28; *Friendswood Dev. Co.*, 256 S.W.3d at 751. We overrule the City's first issue.

10

## V. Limitation of Damages

In its second issue, the City contends that even if the Development Agreement falls within the waiver of immunity in local government code Chapter 271, the trial courts lack subject matter jurisdiction over Appellees' breach of contract claims because Appellees' alleged damages do not fall within those available under local government code section 271.153.

Relevant to this case, section 271.153 provides that breach of contract damages against the City are limited to "the balance due and owed by the [City] under the contract" and cannot include any consequential damages not expressly included within any balance due and owing to Appellees. Tex. Loc. Gov't Code Ann. § 271.153(a)(1), (b)(1) (Vernon Supp. 2010). The City argues both that there is no balance due and owing to Appellees and that Appellees' potential damages are consequential damages for which sovereign immunity is not waived by Chapter 271. Appellees respond that the City's damages argument is not jurisdictional and is premature.

In *Kirby Lake*, the supreme court stated that "[t]he purpose of section 271.153 is to limit the amount due by a governmental agency on a contract once liability has been established, not to foreclose the determination of whether liability exists." 320 S.W.3d at 840. And in *City of Mesquite v. PKG Contracting, Inc.*, our sister court stated that "statutory limitations on PKG's recoverable damages do not deprive the trial court of subject matter jurisdiction to adjudicate

11

PKG's breach of contract claims." 263 S.W.3d 444, 448 (Tex. App.—Dallas 2008, pet. denied).

Appellees pleaded that there are amounts due and owing under the Development Agreement and that they seek specific performance of the Development Agreement,[6] and they argue on appeal that they seek recovery of at least the cost of constructing 400 parking spaces due to the City's relocation of the recreation center. Appellees' pleadings are sufficient to invoke the trial courts' subject matter jurisdiction. *See Dallas Area Rapid Transit v. Monroe Shop Partners, Ltd.*, 293 S.W.3d 839, 842 (Tex. App.—Dallas 2009, pet. denied); *PKG Contracting, Inc.*, 263 S.W.3d at 448. The City's argument concerning Appellees' damages "takes us far into the merits of the lawsuit and beyond jurisdictional facts," *Dallas Area Rapid Transit*, 293 S.W.3d at 842, and we decline to adjudicate Appellees' damage claims by applying section 271.153 within the procedural context of the City's pleas to the jurisdiction.[7] We agree with the *PKG* court that the "trial court is in the best position following further proceedings to determine whether [Appellees may] recover some, all, or none of

---

[6]The Development Agreement provides that the non-breaching party "shall have the right to enforce the terms of this [Development] Agreement by specific performance."

[7]We express no opinion as to whether Appellees may or may not be entitled to specific performance or any other damages following a full adjudication of their claims.

the damages and remedies [they] claim[]."[8]  *PKG Contracting, Inc.*, 263 S.W.3d at 448; *see Dallas Area Rapid Transit*, 293 S.W.3d at 842; *see also City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (holding pleadings alleged sufficient facts to establish waiver of immunity from suit and to defeat plea to jurisdiction and declining to "adjudicate" the plaintiff's damage claim through plea to jurisdiction).  We overrule the City's second issue.

## VI.  Requests for Declaratory Relief and Attorney's Fees

The City argues in its third issue that the trial courts lack subject matter jurisdiction over two of Appellees' requests for declaratory relief because one request does not ask the trial court to construe or decide the validity of a municipal ordinance or franchise and because the City is not a proper party in a suit relating to the second request.  The City's fourth issue asserts that Appellees cannot recover attorney's fees under the Declaratory Judgment Act for the

---

[8]We are aware of the supreme court's holding in *Tooke* that the Tookes' only damages were consequential damages excluded from recovery by section 271.153, but *Tooke* was an appeal following a trial on the merits.  *See* 197 S.W.3d at 329, 346.  Similarly, we held in *Boyer, Inc. v. Trinity River Authority of Texas* that a fact issue required reversal of a summary judgment for the governmental entity because the plaintiff presented evidence that its lost profits were direct, rather than consequential, damages not precluded by section 271.153.  *See* 279 S.W.3d 354, 359 (Tex. App.—Fort Worth 2008, pet. denied).  This case, however, is an interlocutory appeal following the denial of the City's pleas to the jurisdiction.  As our sister court stated, "We cannot say on this record that [Appellees'] claim for damages is solely for damages excluded by the statute." *PKG Contracting, Inc.*, 263 S.W.3d at 448.

requests for declaratory relief over which the trial courts do not have subject matter jurisdiction.

## A. Relocation of Recreation Center

### 1. Applicable Law

The Texas Declaratory Judgments Act contains a waiver of immunity from suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (Vernon 2008); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009). But this waiver is a limited one, and determining whether a particular request for declaratory relief falls within this waiver of immunity is often complicated.

Immunity from suit is waived if a party joins a governmental entity and seeks a declaration that an ordinance or statute is invalid, based on either constitutional or nonconstitutional grounds. *See Heinrich*, 284 S.W.3d at 373 n.6; *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007); *Lakey v. Taylor*, 278 S.W.3d 6, 15 (Tex. App.—Austin 2008, no pet.); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148–49 (Tex. 1995). Likewise, immunity from suit is waived if a party joins a governmental entity and seeks a declaration construing an ordinance or statute. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–34 (Tex. 2010) (noting that governmental entities are to be joined in suits to construe their legislative pronouncements and that immunity from suit is waived in such suits (citing *Heinrich*, 284 S.W.3d at 373 n.6)); *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 445–46 (Tex. 1994) (stating that governmental entities are not immune from suits seeking a

14

construction of their legislative pronouncements). However, governmental immunity generally bars suits for retrospective monetary relief, and private parties cannot circumvent a governmental entity's immunity from suit by characterizing a suit for money damages as a declaratory judgment claim. *See Heinrich*, 284 S.W.3d at 368–69, 371. Therefore, if a litigant joins a governmental entity and seeks an otherwise proper declaratory judgment construing or invalidating a statute, this claim is nonetheless barred by governmental immunity if the declaration sought would have the effect of establishing a right to relief against the governmental entity for which governmental immunity has not been waived. *See id.* at 372; *City of Houston v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007); *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 360 (Tex. App.—Austin 2009, pet. filed).

### 2. Analysis

The City challenges Appellees' request for a declaration "that the City violated the regulating plan, Development Agreement, TIF Plan and plats in relocating the recreation center site without obtaining [Appellees'] consent." In this regard, we note that one of Appellees' breach of contract allegations is that without Appellees' consent, "the City purchased a 10 acre site outside of [the Development] to construct the recreation center. . . . The City has violated the Development Agreement, approved [Development] zoning regulation plan and plats which clearly show the civic location of the recreation center." A party may not seek a declaratory judgment "only in an attempt to have the trial court decide

15

its breach-of-contract claim." *IT-Davy*, 74 S.W.3d at 860 (holding that the limited waiver under the Declaratory Judgment Act recognized in *Leeper* "does not allow private parties to sue the State for money damages"); *see also City of Corinth v. NuRock Dev. Inc.*, 293 S.W.3d 360, 368–69 (Tex. App.—Fort Worth 2009, no pet.) (holding that immunity is not waived for a requested declaration that the plaintiff "did not materially breach the [contract] or otherwise fail to meet its obligations to the City"). Appellees' requested declaration is merely a recasting of their claim for breach of the Development Agreement. *See IT-Davy*, 74 S.W.3d at 860; *NuRock*, 293 S.W.3d at 368–69. Therefore, we hold that the trial courts in both the Urban Partners suit and the Arcadia suit erred by denying the City's partial plea to the jurisdiction as to this request for a judicial declaration, and we sustain this portion of the City's third issue.

## B. Denial of SUP Applications

The City also challenges Appellees' request in the Urban Partners suit for a declaration "that the City did not comply with its ordinances and state statute in denying the SUP applications." The City argues that this is a request for the trial court to declare that various city officials did not comply with state law and city ordinances in denying the SUPs, that the City is not a proper party in a suit seeking this type of declaration, and that the allegedly offending, non-party city officials are the proper parties.

In *City of El Paso v. Heinrich*, Heinrich sued various governmental entities for declaratory relief after the entities reduced her monthly pension benefits. *See*

16

284 S.W.3d at 369. Specifically, Heinrich alleged that "the Pension Board and its individual members acted outside their authority and in violation of the Texas Constitution when they reduced [her] benefits." *Id.* at 377. The court interpreted her claim as one challenging the Board's action under the applicable statute, not as one challenging the validity of the statute, and held that her claim could only be brought in an *ultra vires* suit against the appropriate officials in their official capacity. *Id.*

In *Texas Department of Insurance v. Reconveyance Services, Inc.*, Reconveyance sought declaratory relief against the Department concerning the Department's interpretation of certain insurance code provisions. *See* 306 S.W.3d 256, 257–58 (Tex. 2010). Reconveyance sought a declaration that the Department had, through its interpretation of the insurance code provisions, acted beyond its authority by attempting to limit the services Reconveyance could offer through title agencies. *Id.* at 258. Relying on *Heinrich*, the supreme court held that Reconveyance's suit was an *ultra vires* suit because it sought to establish that Department employees had acted without statutory authority. *Id.* at 258–59. The supreme court dismissed Reconveyance's suit for lack of subject matter jurisdiction because Reconveyance had not sued any of the Department's officials. *Id.* at 259.

In their pleadings, Appellees allege that "City staff continually changed [the] requirements" for the SUPs, "raising the bar so high it could never be met by [Appellees]" and that "City staff manufactured three 'reasons' for denying the

17

SUP Application, '[but] the actual reasons . . . for the denial was that the City did not want additional multi-family development." Appellees' request for a declaration "that the City did not comply with its ordinances and state statute in denying the SUP applications" is, like in *Heinrich* and *Reconveyance*, an *ultra vires* claim alleging that City officials acted without legal authority in denying the SUP applications, and it may only be brought against the City officials in their official capacities. *See Reconveyance*, 306 S.W.3d at 259; *Heinrich*, 284 S.W.3d at 377. Thus, the City's immunity from suit has not been waived, and the trial court in the Urban Partners suit erred by denying the City's plea to the jurisdiction as to this requested declaration. *See Reconveyance*, 306 S.W.3d at 258–59; *Heinrich*, 284 S.W.3d at 377.

Appellees, citing *Sanders v. City of Grapevine*, argue that because the City has conceded that the trial court has jurisdiction over some of their requested judicial declarations, the trial court has jurisdiction over all of Appellees' other requests for judicial declarations. *See* 218 S.W.3d 772, 779–80 (Tex. App.—Fort Worth 2007, pet. denied). However, we do not read *Sanders* to support Appellees' contention. There, we held that Sanders's pleading for declaratory relief did not on its face "seek to impose damages or other liability on the City" and that the trial court erred by granting the City's plea to the jurisdiction as to the request for declaratory relief. *Id.* Contrary to Appellees' assertion, nothing in *Sanders* suggests that if the City's immunity from suit has been waived as to one request for declaratory relief, the City's immunity has been waived as to all other

18

requests for declaratory relief.  *See id.*  We sustain the remainder of the City's third issue.

## C. Attorney's Fees

In part of its fourth issue, the City argues that Appellees may not recover attorney's fees under the Declaratory Judgments Act for any declarations over which the City's immunity from suit has not been waived.  We agree and hold that Appellees may not recover attorney's fees for prosecuting their requests for judicial declarations (1) "that the City violated the regulating plan, Development Agreement, TIF Plan and plats in relocating the recreation center site without obtaining [Appellees'] consent" and (2) "that the City did not comply with its ordinances and state statute in denying the SUP applications."  *See NuRock*, 293 S.W.3d at 370 (holding that no basis for recovery of attorney's fees existed because declaratory judgment claim was dismissed).  We sustain this portion of the City's fourth issue.[9]

### VII.  Standing to Challenge Zoning Amendment

In the Urban Partners suit, Appellees seek a judicial declaration "that the multi-family/townhome SUP requirement is void and/or cannot be applied to [Appellees'] property because notice was not made in accordance with Chapter 211, Tex. Loc. Gov't Code."  In its fifth issue, the City contends that Urban

---

[9]The parties represented at oral argument that they had reached an agreement concerning the remainder of the City's fourth issue.  Thus, we express no opinion concerning the remainder of the City's fourth issue.

Partners lacks standing to challenge the zoning ordinance amendment based on lack of statutorily required notice because the alleged lack of notice is a mere procedural irregularity that can only be brought by the State in a quo warranto proceeding.[10]

In relevant part, local government code section 211.007(c) states:

Before the 10th day before the hearing date, written notice of each public hearing before the zoning commission on a proposed change in a zoning classification shall be sent to each owner, as indicated by the most recently approved municipal tax roll, of real property within 200 feet of the property on which the change in classification is proposed.

Tex. Loc. Gov't Code Ann. § 211.007(c) (Vernon 2008). It is undisputed that the City did not provide the notice required by section 211.007(c), but the City contends that the lack of notice is merely a procedural irregularity that may only be challenged by the State in a quo warranto proceeding.

In *Bolton v. Sparks*, the supreme court held that a zoning ordinance was invalid because the Dallas City Council did not comply with statutory notice and public hearing requirements. 362 S.W.2d 946, 950 (Tex. 1962). In so holding, the court stated,

The steps directed to be taken for notice and hearing, when provided for in the law, are intended for the protection of the property owner, and are his safeguards against the exercise of arbitrary power. Each act required is essential to the exercise of jurisdiction by the City Council, and each must be rigidly performed.

---

[10]Appellees assert other grounds in their pleadings below to invalidate or limit the zoning amendment, and the City does not challenge those other grounds on appeal. We express no opinion as to Appellees' other challenges.

20

*Id.*; *see also Truman v. Irwin*, 488 S.W.2d 907, 908–09 (Tex. Civ. App.—Fort Worth 1972, no writ) (holding that zoning change was "void and ineffective because of noncompliance" with notice procedures); *City of San Antonio v. Pope*, 351 S.W.2d 269, 272 (Tex. Civ. App.—Eastland 1961, no writ) (same); *City of Amarillo v. Wagner*, 326 S.W.2d 863, 866 (Tex. Civ. App.—Amarillo 1959, writ ref'd n.r.e.) (same); *Tonroy v. City of Lubbock*, 242 S.W.2d 816, 818–19 (Tex. Civ. App.—Amarillo 1951, writ ref'd n.r.e.) (same).

In the context of municipal annexation ordinances, the supreme court has held that private parties do not have standing to challenge municipal annexations for procedural irregularities. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 658 (Tex. 1995) ("Laidlaw has no standing to challenge the annexation on procedural grounds, such as alleged failures to meet the notice and signature requirements."); *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436, 438 (Tex. 1991) (stating that "[t]he only proper method for attacking the validity of a city's annexation of territory is by quo warranto proceeding, unless the annexation is wholly void" and holding that landowner's complaints concerning adequacy of service plan presented to city council and whether quorum was required to conduct hearing were matters for attack via quo warranto); *see also Walton v. City of Midland*, 287 S.W.3d 97, 99, 102–05 (Tex. App.—Eastland 2009, pet. denied) (applying *Alexander Oil* and holding quo warranto required to challenge city council's approval of settlement agreement

21

when alleged impropriety by city council would only render the act voidable, not void).

The City argues that even though *Alexander Oil* was an annexation case, it implicitly overruled each of the zoning cases cited above because it distinguished void acts—such as an act exceeding statutory authority—from voidable acts—such as procedural irregularities—and held that procedural irregularities must be challenged via quo warranto because they render annexation ordinances voidable rather than void.[11]  According to the City, the failure to provide notice as required by local government code section 211.007(c) is a procedural irregularity that would merely render the zoning ordinance voidable, and thus, Urban Partners has no standing to challenge the zoning ordinance because a quo warranto proceeding is required.

However, the supreme court has not held that procedural irregularities in zoning cases—such as the lack of notice alleged against the City in this case—can only be brought by the State in quo warranto proceedings.  *See Laidlaw Waste Sys. (Dallas), Inc.*, 904 S.W.2d at 658; *Alexander Oil*, 825 S.W.2d at 437–

---

[11]The City argues on rehearing that *Bolton* was implicitly overruled by *Alexander Oil*.  Specifically, the City contends that *Alexander Oil* overruled *City of Duncanville v. City of Woodland Hills*, 489 S.W.2d 557, 558 (Tex. 1972) (per curiam), and that *City of Duncanville* relied on *Bolton*.  *See Alexander Oil*, 825 S.W.2d at 438–39; *City of Duncanville*, 489 S.W.2d at 558.  We disagree. *Alexander Oil* overruled *City of Duncanville* because it "conflicted with the long line of authority that only the state can challenge *annexation* for such procedural irregularities because such irregularities merely result in voidable ordinances." *Alexander Oil*, 825 S.W.2d at 439 (emphasis added).  *Alexander Oil* made no mention of *Bolton* or any intent to overrule it.  *Id.* at 438–39.

22

39. Rather, it is well-settled that the failure to give notice of a proposed zoning change renders the zoning ordinance void, not voidable. *See Bolton*, 362 S.W.2d at 950; *Truman*, 488 S.W.2d at 908–09; *Pope*, 351 S.W.2d at 272; *Wagner*, 326 S.W.2d at 866; *Tonroy*, 242 S.W.2d at 818–19. Thus, even if quo warranto might be required in zoning cases involving voidable acts (an issue we need not decide), quo warranto is not required in the present zoning case because the failure to give notice renders the zoning ordinance void. *See, e.g., Bolton*, 362 S.W.2d at 950. And private parties have standing to challenge void ordinances. *See Alexander Oil*, 825 S.W.2d at 436 ("The only proper method for attacking the validity of a city's annexation of territory is by quo warranto proceeding, *unless the annexation is wholly void*.") (emphasis added). Therefore, we hold that Urban Partners has standing to challenge the zoning amendment based on lack of statutorily required notice, and we overrule the City's fifth issue.

## VIII. Inverse Condemnation

In its seventh issue,[12] the City asserts that the trial courts do not have subject matter jurisdiction over one of Appellees' inverse condemnation claims because it is merely a restatement of Appellees' breach of contract claims.[13] Appellees respond that the City's breach of the Development Agreement is only

---

[12]The City has withdrawn its sixth issue.

[13]The City concedes that the trial courts have subject matter jurisdiction over Appellees' two other inverse condemnation claims.

23

one of the factors to consider in determining the merits of their inverse condemnation claim. In this regard, Appellees' second amended petition alleges that the City's actions constitute a taking in violation of article 1, section 17 of the Texas constitution because "the City has deprived [Appellees] of their reasonable investment backed expectations (depriving [Appellees] of reasonable use and enjoyment of the Property)" and that Appellees "had a reasonable expectation that the recreation center and parking spaces would be developed in accordance with the Development Agreement, regulating plan, preliminary plat and TIF documents."[14]

"To establish a takings claim under Article I, section 17, the claimant must show that a governmental actor acted intentionally to take or damage property for a public use." *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). "When the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent-domain powers and thus retains its immunity from suit." *Id.* Thus, a plaintiff may not recast a breach of contract claim against a governmental entity as one for inverse condemnation. *See id.* at 643–44. In this case, however, Appellees have not merely recast their breach of contract claim as one for inverse condemnation.

"[A] restriction in the permissible uses of property or a diminution in its value, resulting from regulatory action within the government's police power, may

---

[14]We quote from the pleadings in the Arcadia suit but note that the pleadings in the Urban Partners suit contain a substantially similar allegation.

24

or may not be a compensable taking." *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 670 (Tex. 2004) (citing *Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex. 1994)). Although some are, "not every regulation is a compensable taking." *Id.* "[W]hether [a] regulation has gone 'too far' and become too much like a physical taking for which the constitution requires compensation requires a careful analysis of how the regulation affects the balance between the public's interest and that of private landowners." *Id.* at 671–72. To make this determination, courts consider "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations'; and (3) 'the character of the governmental action.'" *Id.* at 672 (quoting *Connolly v. Pension Benefits Guar. Corp.*, 475 U.S. 211, 225, 106 S. Ct. 1018, 1026 (1986)).

Appellees cite *City of San Antonio v. El Dorado Amusement Co.* to support their contention that the City's breach of the Development Agreement is only one factor in evaluating the merits of their inverse condemnation claim. *See* 195 S.W.3d 238, 246–47 (Tex. App.—San Antonio 2006, pet. denied). There, El Dorado offered evidence that it had profitably operated a business for several years before the city amended the zoning regulation to prohibit the sale of alcohol on the premises and that the rezoning significantly impaired its ability to operate its business. *Id.* The court held that a compensable regulatory taking resulted from the city's rezoning because the evidence supported "a finding that the enactment of the rezoning ordinance had a severe economic impact on El

25

Dorado's business and unreasonably interfered with El Dorado's investment-backed expectations." *Id.* at 247; *see also City of Carrolton v. McPhee*, 05-08-01018-CV, 2009 WL 2596145, at *2 (Tex. App.—Dallas Aug. 25, 2009, no pet.) (mem. op.) (affirming denial of plea to jurisdiction and holding pleadings sufficiently alleged regulatory taking).

Here, Appellees allege that the City deprived them of their reasonable investment-backed expectations, and they contend that they had a reasonable expectation—based on seventy-percent of the development being constructed in accordance with the zoning, plats, building permits, Development Agreement, and TIF financing documents and all of which having been in place for several years—that the recreation center and parking spaces would be developed in accordance with those documents. These allegations are sufficient to allege a regulatory taking that unreasonably interfered with Appellees' investment-backed expectations. *See El Dorado*, 195 S.W.3d at 246–47; *McPhee*, 2009 WL 2596145, at *2. While the City's alleged breach of the Development Agreement, standing alone, cannot form the basis of an inverse condemnation claim because it would be nothing more than a recasting of Appellees' breach of contract claim, *see Holland*, 221 S.W.3d at 643–44, Appellees reference the Development Agreement as only one evidentiary factor to consider in determining whether the City's actions as a whole constitute a regulatory taking. *See El Dorado*, 195 S.W.3d at 246–47; *McPhee*, 2009 WL 2596145, at *2. We therefore overrule the City's seventh issue.

26

## IX.  Conclusion

Having overruled the City's first, second, fifth, and seventh issues, we affirm in part the trial courts' denials of the City's partial pleas to the jurisdiction. Having sustained the City's third issue and part of the City's fourth issue, we reverse in part the trial courts' orders denying the City's pleas to the jurisdiction. We dismiss for lack of subject matter jurisdiction (1) Appellees' request for a declaration in both the Urban Partners suit and the Arcadia suit "that the City violated the regulating plan, Development Agreement, TIF Plan and plats in relocating the recreation center site without obtaining [Appellees'] consent"; (2) Appellees' request for a declaration in the Urban Partners suit "that the City did not comply with its ordinances and state statute in denying the SUP applications"; and (3) Appellees' requests for attorney's fees for prosecuting these requests for judicial declarations.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED:   April 28, 2011

27