02-10-408-CV










 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.  02-10-00408-CV

 

 


 
 
 Town of Flower Mound, TEXAS, Harlan Jefferson, Town
 Manager and Charles Springer, Assistant Town Manager/Chief Financial Officer
 
 
  
 
 
 APPELLANTS
 AND APPELLEES
 
 
 
 
  
 V.
  
 
 
 
 
 Rembert Enterprises, Inc.
 
 
  
 
 
 APPELLEE
 AND APPELLANT
 
 


 

 

----------

 

FROM THE 367th
District Court OF Denton COUNTY

----------

 

OPINION
ON REHEARING

----------

 

I. 
Introduction

          After
considering Appellants’ motion for rehearing, we deny the motion but withdraw
our prior opinion and judgment of December 8, 2011, and substitute the
following.

          In
this interlocutory appeal, Appellants Town of Flower Mound, Texas; Harlan
Jefferson, Town Manager; and Charles Springer, Assistant Town Manager/Chief
Financial Officer (collectively, Appellants) challenge the trial court’s
partial denial of their plea to the jurisdiction in the lawsuit filed against
them by Appellee Rembert Enterprises, Inc. (Rembert).[1] 
Appellants contend in five issues that governmental immunity protects it from Rembert’s
declaratory judgment, breach of contract, and attorney’s fee claims and that
Jefferson and Springer have derivative immunity.  In its cross appeal, Rembert
argues that the trial court erred by partially granting Appellants’ plea to the
jurisdiction against Rembert’s inverse condemnation claim.  We affirm in part
and reverse in part.

II. 
Background

          Rembert
is the developer of a residential subdivision in Flower Mound (the Property). 
When Rembert applied to Flower Mound for approval of its development permits,
Flower Mound required Rembert to construct Auburn Drive on the property and
other land Rembert did not initially own as a condition of approval.  Rembert
and Flower Mound thereafter entered into three separate development agreements,
and Rembert constructed Auburn Drive as set forth in those agreements.  Flower
Mound paid Rembert fifty percent of the Auburn Drive construction cost, but
Rembert alleges in its third amended petition that the August 4, 2008
Development Agreement (the Agreement) required Flower Mound to reimburse
Rembert the full cost of constructing Auburn Drive through a combination of
impact fee credits and direct reimbursement.  Rembert alleges that Flower
Mound’s failure to fully reimburse the Auburn Drive construction costs is a
breach of the Agreement or, alternatively, constitutes a compensable taking.
Rembert further seeks judicial declarations (1) that the Impact Fee Act,[2]
the Agreement, and Flower Mound’s ordinances required Flower Mound to
“reimburse Rembert for 100% of the cost to construct Auburn Drive” and (2) that
Flower Mound, Jefferson, and Springer “had a ministerial obligation to forward
the sums owed to [Rembert], and their refusal to do so was unauthorized and
illegal.”

Appellants
answered Rembert’s petition and filed a plea to the jurisdiction that they
amended on two occasions.  The trial court conducted an evidentiary hearing on Appellants’
second amended plea to the jurisdiction and granted the plea in part.  Appellants
appeal the trial court’s partial denial of their plea to the jurisdiction, and
Rembert appeals the trial court’s partial grant of Appellants’ plea.

III. 
Standard of Review

Whether
the trial court had subject matter jurisdiction is a question of law that we
review de novo.  Tex. Natural Res. Conservation Comm’n v. IT-Davy, 74
S.W.3d 849, 855 (Tex. 2002).  A plea to the jurisdiction is a dilatory plea
that challenges the trial court’s subject matter jurisdiction.  Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  It is used to defeat a
cause of action without regard to whether the claims asserted have merit.  Id. 
Although the claims may form the context in which a plea to the
jurisdiction is raised, the plea should be decided without delving into the
merits of the case.  Id.

          “[S]overeign
immunity deprives a trial court of subject matter jurisdiction for lawsuits in
which the state or certain governmental units have been sued[,] unless the
state consents to suit.”[3]  Tex. Dep’t of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004).  In Texas,
sovereign immunity has two components:  immunity from liability and immunity
from suit.  Tooke, 197 S.W.3d at 332; Miranda, 133 S.W.3d at
224.  Immunity from liability “bars enforcement of a judgment against a
governmental entity” and is an affirmative defense.  Tooke, 197 S.W.3d
at 332; Miranda, 133 S.W.3d at 224.  Immunity from suit, on the other
hand, “bars suit against the [governmental] entity altogether” because it
“deprives a court of subject matter jurisdiction.”  Tooke, 197 S.W.3d at
332; Miranda, 133 S.W.3d at 224.  This appeal involves immunity from
suit.

When
a governmental entity such as Flower Mound enters into a contract, it waives
immunity from liability but does not waive immunity from suit unless the
legislature has clearly and unambiguously waived the governmental entity’s
immunity from suit.  Tooke, 197 S.W.3d at 332–33.  To invoke the trial
court’s subject matter jurisdiction over a claim arising out of a governmental
entity’s contractual obligations, the plaintiff must allege a valid waiver of
immunity from suit and plead sufficient facts demonstrating the trial court’s
jurisdiction.  Miranda, 133 S.W.3d at 226; Tex. Ass’n of Bus.
v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  We construe the
pleadings liberally in favor of the plaintiff, look to the pleader’s intent,
and accept the pleadings’ factual allegations as true.  Miranda, 133
S.W.3d at 226.  If, as in this case, a plea to the jurisdiction challenges the
existence of jurisdictional facts, we consider relevant evidence submitted by
the parties that is necessary to resolve the jurisdictional issues.  Id. at 227; see also Bland, 34 S.W.3d at 555 (stating that “[t]he court
should, of course, confine itself to the evidence relevant to the
jurisdictional issue”).  We take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant’s favor.  Wise Reg’l Health Sys. v. Brittain, 268 S.W.3d
799, 805 (Tex. App.—Fort Worth 2008, no pet.) (citing Miranda, 133
S.W.3d at 228).  If the evidence creates a fact question regarding
jurisdiction, the trial court must deny the plea to the jurisdiction and leave
its resolution to the factfinder.  Miranda, 133 S.W.3d at 227–28.  But
if the evidence is undisputed or fails to raise a fact question on the
jurisdictional issue, the trial court rules on the plea to the jurisdiction as
a matter of law.  Id. at 228.

IV. 
Breach of Contract

          Appellants
contend in their third issue that the trial court does not have subject matter
jurisdiction over Rembert’s breach of contract claim because the Agreement does
not involve the provision of goods and services as required for a waiver of
immunity under local government code chapter 271.

          Section
271.152 of the local government code states:

A local governmental
entity that is authorized by statute or the constitution to enter into a
contract and that enters into a contract subject to this subchapter waives
sovereign immunity to suit for the purpose of adjudicating a claim for breach
of the contract, subject to the terms and conditions of this subchapter.

Tex.
Loc. Gov’t. Code Ann. § 271.152 (West 2005). 
A “[c]ontract subject to this subchapter” is defined, in relevant part, as “a
written contract stating the essential terms of the agreement for providing
goods or services to the local governmental entity.”  Id. §
271.151(2) (West 2005).

Appellants
argue that, even though Rembert used goods and services to construct Auburn
Drive, the Agreement is not a contract for “goods or services” because it is
ultimately a contract for the conveyance of improved real property.[4]
 But the Agreement involved more than the conveyance of improved real property,
and this distinction is illustrated by two supreme court opinions concerning
the provision of goods or services to a municipality by contract.  See Kirby
Lake Dev., Ltd. v. Clear Lake City Water Auth., 320 S.W.3d 829 (Tex. 2010); Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdiv.
Prop./Cas. Joint Self-Ins. Fund, 212 S.W.3d 320 (Tex. 2006).

In Ben
Bolt, ninety-two governmental entities formed an insurance fund to provide
casualty insurance to fund participants.  See 212 S.W.3d at 322.  Fund
members elected a governing board, and a board subcommittee resolved self-insurance
claim disputes.  See id. at 327.  The Fund argued that its immunity from
suit was not waived by local government code section 271.152 because no goods
or services were provided to the Fund under the insurance contract with a
member entity.  See id.  Disagreeing, the supreme court held that the
Fund’s immunity from suit was waived because the members provided services to
the Fund in that the members elected the governing board whose subcommittee
resolved claim disputes.  See id.  Thus, in Ben Bolt, even though
the service provided to the Fund was not the primary purpose of the contract,
the members’ provision of claim dispute services was sufficient to fall within
the waiver of immunity under local government code section 271.152.  See id.
at 327–28.

In Kirby Lake, several developers entered into agreements with the Clear Lake
Water Authority.  320 S.W.3d at 832.  The development agreements required the
developers to build water and sewer facilities and lease the facilities to the
Water Authority free of charge.  Id.  The court of appeals held that the
developers’ “agreement to hire third parties to construct the Facilities and to
build the streets, roads, and bridges” was “sufficient to constitute the
provision of services to the [Water] Authority.”  Clear
Lake City Water Auth. v. Friendswood Dev. Co., Ltd.,
256 S.W.3d 735, 751 (Tex. App.—Houston [14th Dist.] 2008, pet. dism’d) (op. on
reh’g). 
Affirming and holding that the Water Authority’s immunity from suit was waived
by section 271.152, the supreme court stated:

We
agree with the court of appeals that the Agreements entail services provided
directly to the [Water] Authority.  The Developers contracted to construct,
develop, lease, and bear all risk of loss or damage to the facilities,
obligations far more concrete than those at issue in Ben Bolt.  We
therefore hold that the Agreements contemplate the provision of services under
the statute.

Kirby
Lake,
320 S.W.3d at 839 (internal citation omitted).

          In
this case, the Agreement required Rembert to “construct Auburn Drive
. . . together with all related appurtenances in addition to all
other facilities necessary to serve the Property,” to “acquire in fee simple
all rights-of-way necessary for the Right-Turn Lane,” to “design and construct the
Right-Turn Lane in accordance with [Flower Mound]’s engineering standards,” and
to “work with TxDOT and [Flower Mound] to determine the proper location and
alignment of the Right-Turn Lane.”  Clearly, the Agreement required Rembert to
provide services to Flower Mound in the manner, at least, of constructing
Auburn Drive; designing and constructing the Right-Turn Lane; and working with
TxDOT concerning the location, alignment, design, and construction of the
Right-Turn Lane.  See id. at 839–40; Ben Bolt, 212 S.W.3d at 327–28;
City of N. Richland Hills v. Home Town Urban Partners, Ltd., 340 S.W.3d
900, 908–09 (Tex. App.—Fort Worth 2011, no pet.) (holding agreement to hire
third party contractors, among other things, constituted provision of services
to city); Wight Realty Interests, Ltd. v. City of Friendswood, 333
S.W.3d 792, 797 (Tex. App.—Houston [1st Dist.] 2010, no pet.); Friendswood
Dev. Co., 256 S.W.3d at 751; see also City of San Antonio v. Lower Colo.
River Auth., No. 03-10-00085-CV, 2011 WL 3307509, at *3 (Tex. App.—Austin
July 29, 2011, no pet.) (holding contract was for goods or services because it
required the water authority “to identify, pursue, and fund feasibility studies
that subsequently became LCRA’s exclusive property”).

Appellants
attempt to distinguish Ben Bolt, Kirby Lake, and other similar
cases by arguing that the contracts at issue in those cases differ from the contract
at issue here because the contract here is “nothing more than a restatement of
independent obligations that Rembert must undertake under the Town’s
development regulations as part of the land-development process.” However, Appellants’
argument requires a close examination of the merits of Rembert’s lawsuit beyond
a review of Rembert’s pleadings and the jurisdictional evidence, an inquiry the
supreme court has cautioned against.  See Bland, 34 S.W.3d at 554. 
Furthermore, Appellants’ contention ignores one of the fundamental fact issues
underlying its dispute with Rembert, that is, whether the construction of
Auburn Drive was actually required by Flower Mound’s ordinances.  Appellants argue
on appeal and presented evidence to the trial court that Flower Mound’s
ordinances required the construction of Auburn Drive, but Rembert argues on
appeal and pointed to other evidence in the trial court that the property
already had existing access to the north and south at the time Rembert
purchased it.[5]  Thus, one possibility is
that the factfinder will determine that Flower Mound’s ordinances did not
require the construction of Auburn Drive.[6]  Should that occur, then
the Agreement is not at all a memorialization of Flower Mound’s ordinances. 
Therefore, Appellants’ contention that the Agreement merely memorialized
Rembert’s development obligations under Flower Mound’s ordinances cannot be
resolved in this pretrial plea to the jurisdiction proceeding.  See
generally Miranda, 133 S.W.3d at 227 (stating trial court cannot grant plea
to jurisdiction if there is a fact question concerning the jurisdictional
issue).

We
hold, based on Rembert’s third amended petition and the parties’ plea to the
jurisdiction evidence, that local government code section 271.152 waives Flower
Mound’s immunity from suit with regard to the Agreement because the Agreement
is a contract for the provision of services to Flower Mound within the meaning
of that statute.  See Tex. Loc. Gov’t Code Ann. §§ 271.151(2), .152; Kirby
Lake, 320 S.W.3d at 839–40; Ben Bolt, 212 S.W.3d 327–28; Home
Town, 340 S.W.3d at 908–09; Friendswood Dev. Co., 256 S.W.3d at
751.  We overrule Appellants’ third issue.

V. 
Declaratory Judgment and Individual Defendants

          Appellants
contend in their first and fifth issues that the trial court did not have
subject-matter jurisdiction over Rembert’s requested declarations because they
are nothing more than a restatement of Rembert’s breach of contract claim and
because Jefferson and Springer have derivative immunity.  Appellants argue in
part of their fourth issue that Rembert may not recover attorney’s fees for
declaratory judgment claims over which the trial court did not have
subject-matter jurisdiction.  Because Appellants’ first, fourth, and fifth
issues are related, we address them together.

A. 
Applicable Law

          The
Declaratory Judgments Act contains a waiver of immunity from suit.  See Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2008); City of El Paso v.
Heinrich, 284 S.W.3d 366, 373 n.6 (Tex. 2009).  But this waiver is a
limited one, and determining whether a particular request for declaratory
relief falls within this waiver of immunity is often complicated. 

          Immunity
from suit is waived if a party joins a governmental entity and seeks a
declaration that an ordinance or statute is invalid, based on either
constitutional or nonconstitutional grounds.  See Heinrich, 284 S.W.3d
at 373 n.6; City of Elsa v. M.A.L., 226 S.W.3d 390, 391–92 (Tex. 2007); Lakey v. Taylor, 278 S.W.3d 6, 15 (Tex. App.—Austin 2008, no pet.); see
also City of Beaumont v. Bouillion, 896 S.W.2d 143, 148–49 (Tex. 1995).  Likewise, immunity from suit is waived if a party joins a governmental entity
and seeks a declaration construing an ordinance or statute.  See Tex.
Lottery Comm’n v. First State Bank of DeQueen, 325 S.W.3d 628, 633–34 (Tex.
2010) (noting that governmental entities are to be joined in suits to construe
their legislative pronouncements and that immunity from suit is waived in such
suits) (citing Heinrich, 284 S.W.3d at 373 n.6); Tex. Educ. Agency v.
Leeper, 893 S.W.2d 432, 445–46 (Tex. 1994) (stating that governmental
entities are not immune from suits seeking a construction of their legislative
pronouncements).  However, governmental immunity generally bars suits for
retrospective monetary relief, and private parties cannot circumvent a
governmental entity’s immunity from suit by characterizing a suit for money
damages as a declaratory judgment claim.  See Heinrich, 284 S.W.3d at
368–69, 371; see also City of Houston v. Williams, 216 S.W.3d 827,
828–29 (Tex. 2007) (“The only injury the retired firefighters allege has
already occurred, leaving them with only one plausible remedy—an award of money
damages.  As they assert no right to payments from the City in the future, they
lack standing to seek a statutory interpretation on behalf of those currently
employed.”).  Therefore, if a litigant joins a governmental entity and seeks an
otherwise proper declaratory judgment construing or invalidating a statute, the
claim is nonetheless barred by governmental immunity if the declaration sought
would have the effect of establishing a right to relief against the
governmental entity for which governmental immunity has not been waived.  See
Heinrich, 284 S.W.3d at 372; Williams, 216 S.W.3d at 828–29; State
v. BP Am. Prod. Co., 290 S.W.3d 345, 360 (Tex. App.—Austin 2009, pet. denied). 
Furthermore, a party may not seek a declaratory judgment “only in an attempt to
have the trial court decide its breach-of-contract claim.”  IT-Davy, 74
S.W.3d at 860 (holding that the limited waiver under the Declaratory Judgment
Act recognized in Leeper “does not allow private parties to sue the
State for money damages”); see also City of Corinth v. NuRock Dev., Inc.,
293 S.W.3d 360, 368–69 (Tex. App.—Fort Worth 2009, no pet.) (holding that
immunity is not waived for a requested declaration that the plaintiff “did not
materially breach the [contract] or otherwise fail to meet its obligations to
the City”).

          “Private
parties may seek declaratory relief against state officials who allegedly act
without legal or statutory authority[,]” but “such suits are not suits against
the State” because “suits to compel state officers to act within their official
capacity do not attempt to subject the State to liability.”  IT-Davy, 74
S.W.3d at 855 (citations omitted).  “In contrast, declaratory-judgment suits
against state officials seeking to establish a contract’s validity, to enforce
performance under a contract, or to impose contractual liabilities are suits
against the State” and “cannot be maintained without legislative permission.”  Id.
at 855–56.

B. 
Discussion

          In
its third amended petition, Rembert requested a judicial declaration that the
Impact Fee Act, the Agreement, and Flower Mound’s ordinances required Flower
Mound to “reimburse Rembert for 100% of the cost to construct Auburn Drive” and
that Flower Mound, “Jefferson[,] and Springer had a ministerial obligation to
forward the sums owed to [Rembert], and their refusal to do so was unauthorized
and illegal.”  However, Rembert similarly alleged in its third amended petition
that Flower Mound breached the Agreement and that Rembert is therefore entitled
to recover the amount Flower Mound owed it under the Agreement.  Rembert’s
requested declarations merely recast Rembert’s claim for breach of the
Agreement.  See IT-Davy, 74 S.W.3d at 860; NuRock, 293 S.W.3d at
368–69.

          Rembert
attempts to distinguish its declaratory judgment claim from its breach of
contract claim by arguing that a judicial interpretation of the Impact Fee Act
and Flower Mound ordinances is required to determine whether Flower Mound is
required to reimburse Rembert fifty or one hundred percent of the cost of
constructing Auburn Drive.  “But in every suit against a governmental entity
for money damages, a court must first determine the parties’ contract or
statutory rights; if the sole purpose of such a declaration is to obtain a
money judgment, immunity is not waived.”  Williams, 216 S.W.3d at 829
(citing IT-Davy, 74 S.W.3d at 860).  Thus, although the Declaratory
Judgments Act typically waives immunity when the construction of a statute or
ordinance is involved, see First State Bank of DeQueen, 325 S.W.3d at 633–34,
the trial court in this case must construe the Impact Fee Act, Flower Mound’s
ordinances, and the Agreement to determine whether Flower Mound breached the
Agreement.  Thus, Rembert’s declaratory judgment claim is merely a recast of
its breach of contract claim, and immunity has not been waived.  See
Williams, 216 S.W.3d at 829; IT-Davy, 74 S.W.3d at 860; NuRock,
293 S.W.3d at 368–69.

Rembert
also contends that Flower Mound’s immunity has been waived because governmental
entities must be joined in suits to construe their legislative pronouncements. 
But as previously discussed, the construction of the ordinances will occur as
part of and is arguably dispositive of Rembert’s breach of contract claim
against Flower Mound, and Flower Mound is already a party to the case for that
purpose.  Furthermore, Rembert’s reliance on City of Crowley v. Ray is
misplaced because that case involved a claim for liability against a third-party
engineer rather than the city; the city was a party only because the construction
of city documents was at issue and pertained to the engineer’s potential
liability.  See No. 02-09-00290-CV, 2010 WL 1006278, at *1, *5 (Tex.
App.—Fort Worth Mar. 18, 2010, no pet.); see also Tex. Civ. Prac. &
Rem. Code Ann. § 37.006(a) (requiring joinder of “all persons who have or claim
any interest that would be affected by the declaration”).  We hold that the
trial court erred by denying Appellants’ plea to the jurisdiction as to
Rembert’s request for a judicial declaration that the Impact Fee Act, Flower
Mound’s ordinances, and the Agreement required Flower Mound to “reimburse
Rembert 100% of the cost to construct Auburn Drive.”  We sustain Appellants’
first issue.

          Appellants
further contend that because the trial court lacked subject-matter jurisdiction
over Rembert’s claim for declaratory relief against it, the trial court also
lacked subject-matter jurisdiction over the claims against Jefferson and
Springer.  Rembert, citing Heinrich, 284 S.W.3d at 378–79, responds that
Jefferson and Springer do not have immunity because the claim against them is
based on their alleged illegal conduct.  Specifically, Rembert argues that
Jefferson and Springer had a ministerial duty to sign the check to Rembert for
the additional amounts owed and that “[t]his situation is similar to the one in
Heinrich where the individually named defendants did not enjoy immunity
where they refused to pay the individual plaintiff in accordance with the terms
of the statute.” But the claim in Heinrich differs from the claim against
Jefferson and Springer in two significant ways.  First, Heinrich alleged
entitlement to future pension benefits and did not seek only a retrospective
remedy.  See id. at 377 (holding claim for prospective benefits must be
against individual officials in their official capacity).  Here, Rembert seeks
only retrospective relief in the form of reimbursement of the cost of
constructing Auburn Drive.  Second, Heinrich’s allegation involved a statutory
rather than a contractual duty.  See id. at 369.  “[D]eclaratory-judgment
suits against state officials ‘allegedly act[ing] without legal or statutory
authority’” are permissible, but “‘declaratory-judgment suits against state
officials seeking to establish a contract’s validity, to enforce performance
under a contract, or to impose contractual liabilities are suits against the
State’” and are not permissible as ultra vires suits against individuals
in their official capacity.  See id. at 371–72 (quoting IT-Davy,
74 S.W.3d at 855–56).  Here, Rembert’s request for a declaration that Jefferson
and Springer had a ministerial duty to issue payment under the Impact Fee Act,
the applicable ordinances, and the Agreement is an impermissible recasting of
Rembert’s breach of contract claim and another manner of seeking retrospective
relief against Flower Mound, and that claim must be brought against Flower
Mound rather than the individual officers.  See id. at 371–72; IT-Davy,
74 S.W.3d at 855–56.  We sustain Appellants’ fifth issue.

Because
we have held that the trial court did not have subject-matter jurisdiction over
Rembert’s declaratory judgment claims, we also sustain the portion of Appellants’
fourth issue relating to Rembert’s claim for attorney’s fees based on its
request for declaratory judgment.  See Home Town, 340 S.W.3d at 913
(holding party could not recover attorney’s fees for prosecuting claims for
which the city’s immunity had not been waived).

VI. 
Impact Fee Act Claim

          Appellants
argue in their second issue and the remainder of their fourth issue that the
trial court did not have subject-matter jurisdiction over Rembert’s Impact Fee
Act claim or Rembert’s corresponding request for attorney’s fees.  However,
Rembert unequivocally pleaded in the trial court and asserted in its appellate
brief that it does not allege a claim under the Impact Fee Act, and we do not
read Rembert’s third amended petition to assert a claim under the Impact Fee
Act.[7] 
Instead, as we understand Rembert’s pleading, the Impact Fee Act is relevant
because Appellants contend that the Impact Fee Act and Flower Mound’s
ordinances limit Rembert’s reimbursement to fifty percent.  As discussed above,
that dispute will be resolved as part of Rembert’s breach of contract claim. 
Thus, we overrule Appellants’ second issue and the remainder of their fourth
issue.  See Tex. R. App. P. 47.1 (requiring appellate court to address
“every issue raised and necessary to final disposition of the appeal”).

VII. 
Inverse Condemnation

          Rembert
contends in its sole cross-issue that the trial court erred by granting Appellants’
plea to the jurisdiction as to Rembert’s inverse condemnation claim.

A. 
Applicable Law

          A
prohibition against taking private property for public use without just
compensation is set forth in article I, section 17 of the Texas constitution, which
provides that “[n]o person’s property shall be taken, damaged, or destroyed for
or applied to public use without adequate compensation being made, unless by
the consent of such person.”  Tex. Const. art. I, § 17; see Mayhew v. Town
of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998).  Takings are classified as
either physical or regulatory.  Mayhew, 964 S.W.2d at 933; Sefzik v.
City of McKinney, 198 S.W.3d 884, 891 (Tex. App.—Dallas 2006, no pet.).  A
physical taking is an unwarranted physical appropriation or invasion of the
property.  Mayhew, 964 S.W.2d at 933.  A compensable regulatory taking
can occur when a governmental entity imposes restrictions that either deny a
property owner all economically viable use of his property or unreasonably interfere
with the owner’s right to use and enjoy the property.  Id. at 935.  A
distinct category of regulatory taking occurs when the government conditions
the approval of a permit or some other type of governmental approval on an
exaction from the approval-seeking landowner.  See Lingle v. Chevron U.S.A.,
Inc., 544 U.S. 528, 548, 125 S. Ct. 2074, 2087 (2005) (referring to
“land-use exaction” taking theory); Dolan v. City of Tigard, 512 U.S.
374, 377–80, 114 S. Ct. 2309, 2312–14 (1994) (permit to expand store and parking
lot conditioned on dedication of portions of property for greenway and bicycle
and pedestrian pathway); Nollan v. Cal. Coastal Comm’n, 483 U.S. 825,
827–28, 107 S. Ct. 3141, 3143–44 (1987) (permit to build larger residence on
beachfront property conditioned on dedication of easement allowing public to
traverse strip of property).  Specifically, an exaction occurs if a
governmental entity requires an action by a landowner as a condition to
obtaining governmental approval of a requested land development.  Town of
Flower Mound v. Stafford Estates, L.P., 71 S.W.3d 18, 30 (Tex. App.—Fort
Worth 2002), aff’d, 135 S.W.3d 620, 630 (Tex. 2004) (citing Dolan,
512 U.S. at 377, 114 S. Ct. at 2312–13, and Nollan, 483 U.S. at 827, 107
S. Ct. at 3143).

          As
stated by the supreme court in Stafford,

conditioning
government approval of a development of property on some exaction is a
compensable taking unless the condition (1) bears an essential nexus to the
substantial advancement of some legitimate government interest and (2) is
roughly proportional to the projected impact of the proposed development.

Town
of Flower Mound v. Stafford Estates, L.P., 135 S.W.3d 620, 634
(Tex. 2004).

B. 
Discussion

In
its third amended petition, Rembert alleged that “the number of vehicular trips
from the houses in the Subdivision represent 5% or less of the capacity of the
roadways Rembert was required to construct by [Flower Mound],” that “Rembert
was coerced into signing (and did not consent to) the boilerplate waiver and
release language to the extent [Flower Mound] was considering paying Rembert
less than 100% of the Auburn Drive costs,” and that “Rembert’s understanding at
the time the Agreement was signed was that Rembert would be reimbursed or
credited 100% of the roadway construction costs based on the express terms of
the Agreement and Chapter 42-78 of the [Flower Mound] Code.”  Rembert also
alleged as follows:

In
the alternative, the construction cost required of Rembert for roadways related
to the Subdivision does not meet the proportionality requirement for an
exaction under Article I, Section 17 of the Texas Constitution.  Rembert is
entitled to recover from [Flower Mound] the total street construction costs
incurred by Rembert related to the Subdivision (or at a minimum, 95% of the
cost).  [Flower Mound] does not enjoy immunity from constitutional violations
for illegal exactions.

Under
facts very similar to this case, the supreme court held in Stafford that
Flower Mound was required to compensate Stafford for the cost of rebuilding a
road abutting but not within Stafford’s development.  See id. at
645.  Flower Mound, as a condition of its approval of the plats for the second
and third phases of Stafford’s development, required Stafford to rebuild the
asphalt road next to the development.  Id. at 623.  Stafford objected,
rebuilt the road as Flower Mound required, and sued Flower Mound for
compensation.  Id. at 624.  After a lengthy discussion of the United
States Supreme Court’s opinions in Nollan and Dolan and after
rejecting Flower Mound’s attempts to distinguish those cases, the Stafford
Court agreed that Flower Mound advanced legitimate government interests—such as
the safety and durability of the road—by requiring Stafford to rebuild the
road.  Id. at 643–44.  However, the court also held that Flower Mound
failed to show that the required rebuild of the road bore “any relationship to
the impact of the Stafford Estates development on the road itself or on the
Town’s roadway system as a whole.”[8]  Id. at 645.  The Court
concluded,

On
this record, conditioning development on rebuilding Simmons Road with concrete
and making other changes was simply a way for the Town to extract from Stafford
a benefit to which the Town was not entitled.  The exaction the Town imposed
was a taking for which Stafford is entitled to be compensated.

Id. 
Relying on Stafford, Rembert argues that the trial court erred by
granting Appellants’ plea to the jurisdiction as to its inverse condemnation
claim.

          Appellants
argue that Stafford is distinguishable because it “involved an off-site
road improvement obligation, not an internal subdivision road.”  But Appellants
omit that Flower Mound required Rembert to not only build Auburn Road to
connect F.M. 1171 and Peters Colony Road but also to acquire the land necessary
to do so in the manner that Flower Mound required instead of permitting Rembert
to build two points of egress on the land it already owned and that abutted
those two roads.  In other words, Flower Mound’s requirement that Rembert
acquire additional land and construct Auburn Drive is not “the garden-variety
on-site requirement” that Appellants contend it to be.

          In
a further attempt to distinguish Stafford, Appellants argue that the
evidence that the development’s use of Auburn Drive will not exceed five
percent of its capacity is not evidence of how much traffic from the
development will use Auburn Drive now or in the future.  Appellants posit that
the development could hypothetically account for seventy-five percent of the
traffic on Auburn Drive but still account for less than five percent of Auburn Drive’s
capacity.  But Appellants ignore other evidence in the record that, combined
with the five percent capacity evidence, presents an issue for the factfinder. 
For example, there is evidence that Auburn Drive was a fee-impact eligible road
and that Flower Mound “anticipated that the construction of Auburn Drive would
likely be necessary within the upcoming 10-year window as a roadway
improvement.”  While this certainly did not guarantee that Flower Mound would
in fact build Auburn Drive, this evidence, combined with the evidence that the
development would use only five percent or less of Auburn Drive’s capacity,
presents a fact question on the proportionality prong of Rembert’s takings
claim.[9]  See id.  In other
words, the factfinder must determine whether Flower Mound took advantage of
Rembert’s request to develop the property and exacted a benefit to which it was
not entitled by requiring that Rembert construct Auburn Drive.

Appellants
also argue that the trial court properly dismissed Rembert’s takings claim
because Rembert consented to the alleged taking.  A landowner may consent to
property being taken or damaged without payment of any compensation.  Tex.
Const. art. I, § 17; Hale v. Lavaca Cnty. Flood Control Dist., 344
S.W.2d 245, 248 (Tex. Civ. App.—Houston 1961, no writ).  Consent is an act of
the will; it need not be written but may be spoken, acted, or implied.  Hightower
v. City of Tyler, 134 S.W.2d 404, 407 (Tex. Civ. App.—El Paso 1939, writ ref’d).

To
support their consent argument, Appellants quote language in the Agreement that
purports to waive any takings claims, points to e-mails it contends show that
Rembert understood all along that his total reimbursement would not exceed
fifty percent of the cost of constructing Auburn Drive, and argues that Rembert
never objected to the condition that it construct Auburn Drive.  The e-mails,
however, all post date the first development agreement, and nothing in the
e-mails confirms Rembert’s supposed understanding or consent to Appellants’
contention that total reimbursement could not exceed fifty percent of the
construction cost.  To the contrary, each e-mail to or from Rembert can be
construed to speak separately about impact fee credits—which are capped at
fifty percent of total cost—and reimbursement—which may or may not be capped at
fifty percent of total cost.[10]  Moreover, Rembert
contends that it did not consent to any taking and that it never understood or
read the Agreement to waive or otherwise preclude its ability to recover up to
100% of the construction cost.  And Rembert presented evidence to support these
contentions.  Specifically, Reginald Rembert’s affidavit in opposition to the
plea to the jurisdiction states that “Rembert’s intent and understanding at the
time the Agreement was signed was that [Flower Mound] would pay Rembert the
difference between the Auburn Drive construction cost minus the total amount of
roadway impact fees in the Subdivision.”  The affidavit also explains Rembert’s
interpretation of Flower Mound’s reimbursement obligation under the Agreement
and states that “[b]ecause Rembert was to be reimbursed for 100% of its costs
to construct Auburn Drive pursuant to the express terms of the Agreement, there
were no constitutional or inverse condemnation claims for Rembert to waive at
that time.”  And based on this evidence, there is a question of fact as to
whether Rembert consented to the alleged taking.  See generally Miranda,
133 S.W.3d at 227 (stating trial court cannot grant plea to jurisdiction if
there is a fact question concerning the jurisdictional issue).  Compare
Stafford, 135 S.W.3d at 624 (stating developer objected “at every
administrative level”), with Rischon Dev. Corp. v. City of Keller, 242
S.W.3d 161, 168–69 (Tex. App.—Fort Worth 2007, pet. denied) (affirming judgment
that developer consented to conditions imposed by not objecting before signing
development agreement).[11]

Finally,
Appellants contend that Flower Mound did not have the requisite intent required
to support a takings claim because a breach of contract cannot result in a
taking.  We disagree for two reasons.  First, Rembert clearly pleaded its
inverse condemnation claim in the alternative to its breach of contract claim.  See
Tex. R. Civ. P. 48 (permitting parties to plead alternative, inconsistent
claims for relief).  Should the trial court determine that the Agreement and
Flower Mound’s ordinances required Flower Mound to reimburse Rembert only fifty
percent of the Auburn Drive construction cost, Rembert’s inverse condemnation
claim would not rely on the Agreement as a basis of liability.  See
generally Sefzik, 198 S.W.3d at 896 (affirming denial of summary judgment
on takings claim based on condition city placed on development approval because
claim not based on contract).  In other words, Rembert’s takings claim, because
it is pleaded in the alternative to its breach of contract claim, is not
dependent upon Flower Mound’s alleged breach of contract.

Second,
the cases upon which Appellants rely are distinguishable.  For example, the
claimants in Kirby Lake contractually agreed that the Water Authority
could use the facilities for free until the Water Authority purchased the
facilities and thus could not claim that the Water Authority’s use of the
facilities constituted a taking.  See 320 S.W.3d at 844.  In Gen.
Servs. Commiss’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 593–94,
598–99 (Tex. 2001), the claimant constructed a recreational facility for Texas
A&M University and contended that by not paying additional amounts under
the contract, the school had taken the claimant’s “labor and materials to build
an athletic facility for use as part of its public university.”  Finally, in NuRock,
NuRock settled a federal lawsuit against the City of Corinth and agreed as part
of the settlement to make improvements to a specified road.  See 293
S.W.3d at 367.  The claimants in each case attempted inverse condemnation
claims based only on contractual obligations.

Here,
there is evidence, some of it conflicting, that the construction of Auburn
Drive may or may not have been required by Flower Mound’s ordinances, that
Flower Mound conditioned approval of Rembert’s development on Rembert’s
construction of Auburn Drive, that only then did the parties enter into a development
agreement, and that Rembert never consented to building Auburn Drive without
receiving full reimbursement.  Should Appellants prevail on their contention
that the Agreement and Flower Mound’s ordinances limit Rembert’s reimbursement
to fifty percent, Rembert should be permitted to proceed on its alternative
claim that Flower Mound’s ordinances and resulting development condition
constituted a compensable taking.  See generally Stafford, 135 S.W.3d at
645.  Of course, if Rembert is found after a trial on the merits to have
consented to receiving only fifty percent reimbursement (or if another defense
to Rembert’s alternative claim for a compensable taking bars Rembert’s recovery),
Rembert could not prevail on its takings claim.  Thus, our holding should not
be construed (as Appellants contend in their motion for rehearing) to mean that
a party may consent via contract to a defined reimbursement and also seek the
remainder of the cost through a takings claim.

On
this record, given the conflicting evidence and the alternative nature of
Rembert’s inverse condemnation claim, we hold that the trial court erred by
granting Appellants’ plea to the jurisdiction as to Rembert’s alternatively
pleaded inverse condemnation claim.  See Tex. R. Civ. P. 48; see also
Stafford, 135 S.W.3d at 645; Miranda, 133 S.W.3d at 227.  We sustain
Rembert’s sole cross-issue.

VIII. 
Conclusion

          Having
overruled Appellants’ second and third issues and part of their fourth issue,
we affirm in part the trial court’s denial of Appellants’ plea to the
jurisdiction.  Having sustained Rembert’s sole cross-issue, we reverse the part
of the trial court’s order that granted Appellants’ plea to the jurisdiction as
to Rembert’s inverse condemnation claim.  Finally, having sustained Appellants’
first and fifth issues and part of their fourth issue, we reverse in part the
trial court’s order denying Appellants’ plea to the jurisdiction and dismiss
for lack of subject-matter jurisdiction Rembert’s request for judicial
declarations and request for attorney’s fees based on that claim.  We remand
the case to the trial court for further proceedings consistent with this
opinion.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and MCCOY, JJ.

 

DELIVERED:  March 1, 2012









[1]See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2011) (permitting
interlocutory appeal from an order granting or denying a plea to the
jurisdiction filed by a governmental unit).





[2]See Tex. Loc. Gov’t
Code Ann. §§ 395.001–.021 (West 2008), .022 (West Supp. 2011); .024–.079 (West
2008), .081 (West Supp. 2011).





[3]Courts often use the terms
interchangeably, but governmental, rather than sovereign, immunity is at issue
in this case.  See Tooke v. City of Mexia, 197 S.W.3d 325, 329
n.11 (Tex. 2006) (distinguishing the State’s sovereign immunity from the
governmental immunity enjoyed by political subdivisions of the State such as
counties, cities, and school districts).





[4]See, e.g., Brown
Water Marine Serv., Inc. v. Aransas Cnty. Navigation Dist. No. 1, No.
13-07-00055-CV, 2008 WL 1822727, at *2 n.1 (Tex. App.—Corpus Christi Apr. 24,
2008, pet. denied) (mem. op.) (holding lease of property not goods or services);
Somerset Indep. Sch. Dist. v. Casias, No. 04-07-00829-CV, 2008 WL
1805533, at *3 (Tex. App.—San Antonio Apr. 23, 2008, pet. denied) (mem. op.)
(holding contract was one for the conveyance of land even though the seller was
required to perform environmental cleanup as a condition of closing).





[5]Appellants argue that
“Rembert fails to distinguish between the existing road conditions suitable for
the existing Country Meadow Estates Mobile Home Park located on the Property
and the road access needed for the proposed 52-lot Casa de Rembert residential
subdivision.”  But this is a question of fact for the factfinder.





[6]We do not imply that the
factfinder will or should make this determination and note only that it is one
possibility.





[7]Rembert pleaded in its
third amended petition that it “is not seeking an impact fee refund under §
395.025, Tex. Loc. Govt. Code” and wrote in its appellate brief that “Rembert
is not making a ‘claim’ under Chapter 395.”





[8]Stafford had offered
evidence that its development would increase traffic on the road by only about
eighteen percent.  Id. at 644.





[9]The parties do not dispute
that the construction of Auburn Drive served legitimate government interests,
the first prong of the takings analysis.  See id. at 634.





[10]Some of the e-mails do
support Appellants’ contention that all reimbursement to Rembert could not
exceed fifty percent of the construction cost, but Rembert was not a sender or
recipient of those e-mails.





[11]Also, we note that
neither Stafford nor Rischon was decided after a pretrial plea to
the jurisdiction and that Appellants resisted responding to discovery in this
case before the trial court ruled on its plea to the jurisdiction.  See
Stafford, 135 S.W.3d at 624; Rischon, 242 S.W.3d at 166.